**KRAUS, Plaintiff, v. HALLE BROTHERS COMPANY AND CITY OF CLEVELAND, Defendants.**

Common Pleas Court, Cuyahoga County.

Nos. 603635, 603636. Decided July 14, 1950.

Henderson, Quail, Schneider & Peirce, Frank A. Quail and Louis S. Peirce, for the Halle Brothers Company.

Lee C. Howley, Director of Law, Robert J. Selzer, Asst. Director of Law, for the City of Cleveland.

William J. Kraus, Myron D. Malitz and A. E. Greenfield, for William J. Kraus, a Taxpayer, etc.

## OPINION

By BLYTHIN, J.

These two causes were tried and are treated together because the issues are precisely the same in each.

The actions are brought by William J. Kraus, a taxpayer, on behalf of the City of Cleveland against The Halle Brothers Company and the City of Cleveland following demand by the plaintiff upon the proper officers of the city that such an action be brought, and rejection of that demand.

Defendant, The Halle Brothers Company is a corporation operating a department store and doing a general mercantile business.

Cause No. 603,635 concerns that portion of East 12th Street, in said city, a public thoroughfare which runs in a general southerly direction a distance of about two hundred and forty-five feet from Huron Road to Prospect Avenue and being about twelve feet wide.

On May 26, 1947 the Council of said City passed Ordinance No. 2835-46, which ordinance became effective July 6, 1947 and, in substance, authorized The Halle Brothers Company its successors and assigns to construct, maintain and use a bridge structure across said East 12th Street (twelve feet wide) and extending from Prospect Avenue northerly to about its intersection with Brownell Court, a distance of about ninety-six feet, and having a clearance above the grade of East 12st Street ranging from fourteen feet, eight inches to seventeen feet. The ordinance further authorized the company to construct, maintain and use under East 12th Street, across its full width, a reinforced concrete tunnel starting a very short distance north of Prospect Avenue and running under East 12th Street a distance of about eighty-two feet, with an inside height of approximately sixteen feet and with the ceiling not less than two and a half feet below the grade of East 12th Street. The ordinance stated plainly the purpose to be to permit the company to connect all floors above the second floor of two buildings of the company, one on each side of East 12th Street and to likewise connect the basements of those buildings. It also provided that the company was to be obligated to secure all customary permits and was to pay the entire cost and expense of supporting, altering, changing, moving or relocating any city owned structure made necessary by reason of the construction of the tunnel and that no structure or support was to be placed within East 12st Street between the established grade of the Street and the overhead clearance of the bridge and that the company was to provide the required artificial lighting within East 12th Street covered by the bridge structure and was to restore East 12th Street to as good a condition as before being disturbed by the authorized operations. All of these things were to be done to the satisfaction and approval of the Director of Public Service of the city.

Section 3 of the Ordinance provided that the company was, upon the city's modification or revocation of the authority then being granted, to support, alter, change, relocate or remove, at its own expense, the structures erected under the authority granted; such right of modification or revocation being specifically retained for exercise whenever the public interest required it. It was also provided that the company was to be obligated, at its own cost and expense, to restore East 12th Street to its original condition following operations involved as a result of modification or revocation of the authority granted.

Section 4 of the Ordinance provided that the company, its

successors and assigns, were to save the City harmless from any damage, loss or liability for injury to persons or property, public or private, due to the contemplated constructions or by reason of the presence, use and maintenance of the structures, both above and below East 12th Street.

Section 5 provided for acceptance of the terms of the Ordinance by the company within twenty days after its passage.

The company accepted the terms of the ordinance by appropriate action within the twenty day period. The Halle Brothers Company is the long term lessee or the owner in fee of the properties on both sides of East 12th Street within the boundaries of the structures authorized by the terms of the ordinance and it will be noted that the ordinance, by its express terms, forbids any placing of any structure or support within East 12th Street. There is, in fact, no encroachment or structure on the surface of East 12th Street. The authority granted under the ordinance was to construct above and below the street surface. There is no proof that the use of the street surface has been interfered with beyond the period actually necessary for the construction operations. The tunnel or subway has been completed and the structure above has been completed to the extent of nine stories high and it is not claimed that the construction in any manner deviates from the authority granted. It is claimed by plaintiff that the company proposes to use, and is actually using, the space within the structures above and below the street for their general business use and that public rights are violated by the existence of the structures in that they occupy air and subterranean rights which are public property. It is also claimed that the ordinance itself is wholly void in that it presumes to authorize the use of public property for private use and is, therefore, an abuse of corporate power, wholly unauthorized and a violation of law. It is further claimed that the company is occupying "valuable land" free of taxation contrary to the provisions of the **Constitution of the State of Ohio, Article VIII, Section 6,** but no evidence was offered to substantiate such claim. It is still further claimed that the reasonable rental value of claimed rights of the city occupied by the company is about $7500.00 per year and that unless relief is granted herein the company will continue to occupy rights of the public, and to the exclusion of the public, without compensation.

Relief is sought to the extent of a restraining order to halt building operations over and under the street, an order declaring the ordinance of Council void; an order requiring the company to demolish and remove its constructions over

and below the street; but if those are not granted there be found the reasonable rental value of the use of the street by the company and an order made for payment of same by the company to the city, and for other relief warranted by the pleadings and the evidence.

The issues in cause No. 603,636 can be said to be identical with those in cause No. 603,635. They are, however, raised between the same parties concerning a similar situation and construction on that section of East 12th Street running in a general southerly direction from Euclid Avenue to Huron Road, which construction proceeded under Ordinance No. 2011-45 passed by the Council of the City of Cleveland on October 15th, 1945 which ordinance is similar in terms generally to Ordinance No. 2835-46 and differing from it only in such details as location, size of construction etc. East 12th Street between Euclid Avenue is approximately two hundred feet long and sixteen and a half feet wide. The construction underneath the street is across its entire width and for about seventy-two feet of the length. The construction above the street is about eleven stories high, across the entire width and for about ninety-eight feet of the length. The company owns, either on long term lease or in fee, the properties on both sides of East 12th Street and there is no encroachment by any structure on the surface of the street.

The Court cannot now consider the issuance of an order restraining the construction because it has already proceeded to completion. The company by its answer sets forth its claim that prior to the passage of said ordinances it indicated to the City of Cleveland and its officials its desire to construct the improvements mentioned in this cause: that such improvements would be of great benefit and profit to the city itself in that they would, among other things, enhance the city's tax duplicate but stated further that the improvements and constructions would not be undertaken unless and until said ordinances were pased by the council of said city and became effective. It further avers that its plans were freely and widely publicized at the time and no protests of any kind were filed until the bringing of this action and that the plaintiff is therefore guilty of laches. The company further avers that if any cause of action ever existed it accrued prior to June 15, 1947 and that these causes, filed June 16, 1949, are barred under the provisions of §4315 GC. The City of Cleveland filed its answer supporting that of The Halle Brothers Company and asserting that the public rights in the premises have been fully protected and the improvements made to the satisfaction of the city. Replies were filed traversing the averments of those answers.

It is important at the outset to ascertain and determine the extent of the rights of the public in East 12th Street and the rights of the company, if any it has separate and apart from the rights of the public in general. There is in evidence, Plaintiff's Exhibit 10, a copy of an ordinance passed by the Council of the City of Cleveland on October 16, 1846 establishing two alleys, one of them being now East 12th Street between Euclid Avenue and Huron Road. There is no recital of facts regarding ownership or the wishes or actions of any owner but a mere declaration that "the same are hereby established public alleys and shall be ranked among the public alleys of the City of Cleveland." It was stated that no such evidence is available as to the section between Huron Road and Prospect Avenue but the parties hereto entered into a stipulation that it has been openly and notoriously used by the public as a thoroughfare for the past thirty years. There is in evidence too, Plaintiff's Exhibit 11, a copy of a page, Plate 5, of a city street atlas of 1898 and the section now known as East 12th Street, Huron to Prospect, is thereon clearly shown, partly as Crooked Alley and partly as Hodge Alley. Plaintiff's Exhibit 17 shows it enlarged—Crooked Alley as Brownell Court and Hodge Alley as East 12th Street. There is no claim, and certainly no evidence, that the City of Cleveland is the owner of a fee simple title to any portion of East 12th Street and there is no escape from the conclusion that the city's right in East 12th Street is that of a holder of the legal title as a trustee for the public, and for use as a public thoroughfare.

### Laches.

Is the plaintiff's action barred by laches? It is a well recognized principle of law that he who seeks equity must do equity and must be reasonably prompt and diligent in his efforts and movements to effect the protection of his claimed rights, and especially is this true in those cases in which others are proceeding and expending funds, or otherwise materially changing their status on the theory, entertained in good faith, that they are proceeding within their legal rights. It is claimed that the plans for the constructions herein complained of were widely and extensively publicized long before any actual construction was undertaken, and that commitments and expenditures of very large sums of money had been made over many months of time before any claim of illegal action was asserted by the plaintiff and that, therefore, he cannot now be heard on his complaint. Authorities are far from uniform in statement of the rule to be applied in a case such as the case at bar. Naturally, the peculiar or particular facts of a case may, and often do, govern in the determination of the

firmness to be exercised and of the effect to be given to delay in the institution of legal action.

Many cases are to be found in which it is clear that the plaintiff has some personal axe to grind even though his suit be in the nature of a taxpayer's suit and be, as a matter of law, entitled to proceed strictly as such.

Other cases involve a challenge to the discretion of parties, usually public officials. Courts are loathe to overrule such officials in matters involving discretion in the performance of duties imposed upon them by law. In such cases a lack of diligence is considered and is weakening to the entire position of a plaintiff taxpayer.

In the case at bar the plaintiff is clearly without personal interest and is acting only as a taxpayer on behalf of all other taxpayers. Furthermore, his complaint is not directed to· discretion, judgment or compliance with detail requirements. It is based on a claim of complete lack of power. If in the instant case The Halle Brothers Company has encroached on public property by leave of the city authorities and it should appear that those authorities were wholly without power to grant such leave it would be a rather revolutionary position to assume to say that taxpayers are barred from asserting the public rights just ·because the hour is somewhat late. Public rights can not with such ease be surrendered or lost. The court is convinced that the claim of laches has no merit in this cause and that the law is correctly stated in State ex rel v. Green et al, 18 O. N. P. .(N. S.) 97 (1915).

Syl. 3. * * * As such taxpayer sues in a purely representative capacity his action is not barred by individual laches, notwithstanding the alleged invalidity of the specifications might have been known to him three months before the . institution of suit, and in the interim large public expenditure has been incurred and important public interests have become involved upon the faith of such specifications."

The court, at page 101, said:

"Moreover, it must be borne in mind that in the present suit it is not the interest of an individual that is sought to be vindicated, but the rights of all taxpayers of the county. Those rights, whatever they may be, may not be put aside because of an infirmity in the position of the particular taxpayer who as relator assumes to represent the public interest."

(Affirmed by Court of Appeals 22 C. C. (N. S.) 1. Motion to certify overruled by Supreme Court of Ohio 1915).

**Saunders v. Board of Education,** 59 N. E. (2) 936. **(42 Abs 172)** (Court of Appeals, Montgomery Co. 1944).

In this case the court cites State ex rel v. Green, supra, and says; page 942,-

"Another reason alleged is that the unsuccessful bidder was guilty of laches in that he did not bring the action until at least 25% of the work was done by the successful bidder. In the case of **State ex rel Waltz v. Green, 18 Ohio N. P. (N. S.)** 97, it is held that: 'One who sues as a taxpayer to enjoin the performance of a public contract on the ground that the specifications therefore are invalid, is not estopped by the fact that as an advocate of unsuccessful bidders he endeavored to procure for them the award of the contract; nor because of such fact will his suit be dismissed on the ground of a total lack of good faith. As such taxpayer sues in a purely representative capacity his action is not barred by individual laches, notwithstanding the alleged invalidity of the specifications might have been known to him three months before the institution of suit, and in the interim large public expenditure has been incurred * * *'

"In the case at bar, we have held that the action was not brought on behalf of the taxpayers but was in reality an action solely for the benefit of the plaintiff, and for that reason we are of the opinion that the rule stated in the above cited case in reference to laches of a taxpayer does not control."

The statement amounts to agreement with the holding in State ex rel v. Green, supra; that where the suit is in fact a taxpayer's suit the doctrine of laches does not apply.

The court has examined all the authorities cited in briefs, and some others, and holds that the petition in this cause cannot be dismissed on the ground of laches.

### Statute of Limitations

Defendants claim that this cause is barred by the statute of limitations. **Sec. 4315 GC** is as follows:

"**Sec. 4315 GC.** No such action to enjoin the performance of a contract entered into or the payment of any bonds issued by a municipal corporation, shall be brought or maintained unless commenced within one year from the date of such contracts or bonds."

It is claimed that Ordinance No. 2835-46 became effective July 7, 1947 and that Ordinance No. 2011-45 was passed by the Council on October 15, 1945; that by their terms they constitute a contract when accepted; that they were, in each case, accepted within the twenty day period prescribed in them; that these actions were not commenced until June 16, 1949 and are, therefore barred.

The ordinances in question provide, in part:

"That as a condition of the authority herein granted, the said The Halle Bros. Company shall accept the terms of this ordinance in writing within 20 days after the passage thereof, and when so accepted it shall constitute a contract between the City of Cleveland and said The Halle Bros. Company, its successors and assigns, subject to all the conditions of all parts of this ordinance."

A mere recitation that a certain enactment shall constitute a contract does not make it so. Contracts of a municipal corporation can only be made for the legitimate purposes of the corporation and in the manner provided and authorized by law. Counsel have not directed the court's attention to any authority which could justify the viewing of the ordinances as contracts of the kind and character referred to in said §4315 GC. The ordinances in question are in the nature of conditional permits or licenses.

A situation on all fours with the cases at bar was before the court in **Kellogg v. Traction Co., 80 Oh St 331,** and the court treated the ordinances of the City of Cincinnati as a permit or license. It had the precise purpose of the ordinances now before this court. In distinguishing the ordinance granting authority to build a bridge across the street from a franchise the court said: page 348:

"* * * but when the use is not in the nature of a franchise but is a use that is recognized as permissible by an abutter, the city may authorize it by a permit or a license, under the general power given it of care, supervision and control. Such a permit or license is a mere regulation of the use; it contained none of the elements of a contract, and is revocable at the pleasure of the city. * * *"

The court holds that the statute of limitations mentioned does not apply in the cases at bar.

**Did the City have the power to authorize the constructions complained of?**

The real and important question in these cases is that of whether or not the City of Cleveland, by its Council, had the power and authority to grant the rights now being enjoyed by The Halle Bros. Company and which led to the constructions installed in accordance with the conditions of the ordinances here claimed to be invalid.

Upon oral argument some reference was made to the provisions of the Charter of the City of Cleveland and especially to the one enumerating the powers which the city intended to exercise and enjoy. They are not important in the consideration of the subject of power. Under the provisions of our constitution all municipalities in Ohio are vested with

all powers of local self-government, subject only to certain limitations therein expressed.

**Constitution of Ohio, Art. XVIII, Sec. 3.**

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

The City of Cleveland cannot, by charter, take unto itself any powers. The charter of a municipality merely selects methods and prescribes the mode of exercising powers fully granted by the constitution.

Prior to the adoption of the constitutional provision above shown (1912) municipal corporations had only such powers as were specifically granted to them by the State. It will be noted that even under the present broad powers enjoyed by municipalities they may not enforce any local police regulations if in conflict with general laws. A perfect example of operation under such provisions is the law of the State governing vehicular traffic on public thoroughfares, especially as to permissible rates of speed.

The legislature could in all probability have undertaken, under the constitutional provision mentioned, to legislate anew and to limit the control of municipalities over the streets within their boundaries. It has not done so, and the broad powers granted, and liabilities imposed, by the provisions of §3714 GC remain in force and effect today to the same extent as they did prior to 1912.

**Sec. 3714 GC**

"Council to have care, supervision and control—Municipal corporations shall have special power to regulate the use of the streets, to be exercised in the manner provided by law. The council shall have the care, supervision and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts, within the corporation, and shall cause them to be kept open, in repair, and free from nuisance."

We have here a public thoroughfare held in trust for the public with its control for public use vested in the municipality. Originally public streets were deemed to be for mere travel and transportation but with the growing necessities of urban centers the public uses have been enlarged or expanded so that they include features not even thought of in days gone by, and such features have become recognized as legitimate "street uses or purposes." The total ownership not being in the city but being limited to a holding in trust for public use, it is still to be considered as a right to use—now a much

expanded use—but use nevertheless. Some privileges may be granted to the abutter.

It has for a long period of time been recognized that the abutter may, by legislative authority or municipal sanction, use portions of the street for strictly private use when such use does not interfere with any legitimate public use nor endanger the public. Dillon on Municipal Corporations, 5th Ed., Sec. 1180, page 1872, states the matter quite clearly:

"* * * It is, however, competent for the legislature to authorize a limited use of the sidewalks in front of buildings in cities and villages for area-ways, cellar openings, or underground vaults, for the more convenient and beneficial enjoyment of the adjacent premises. The use of the sidewalk for these purposes restricts somewhat the free and unembarrassed use of the sidewalk for pedestrians, but it is justified on the ground that the general interests are served,. by making available to the greatest extent valuable property, increasing business facilities, giving encouragement to improvement, and adding to taxable values. The legislative power to permit the use of the streets and sidewalks for these purposes may be delegated to the municipal authorities. * * *"

It is a matter of common knowledge that such uses are constantly and extensively made of lands within the area of the public streets under authority of mere permits issued by municipal authorities, which permits are nothing more than licenses subject to revocation at any time that the public rights and convenience dictate. Such-use is not confined-to area-ways, cellar openings and underground vaults but has been extended to innumerable cases of hitching posts, stepping stones, trap doors on the surface and to awnings, porches, bay windows, cornices, verandas and like ornamental projections above the surface, all, and always, subject to removal in favor of any and all public rights and conveniences. The municipality having the superior right to all use of the street for public purposes, it would hardly be proper to refer to the privileges of the abutter as rights but it certainly must be true that the municipality may lawfully permit him the privilege of use of rights neither used nor needed by the public.

The court has examined all the authorities cited by able counsel for the parties to these actions, as well as many others, and is forced to the opinion that the law, as pronounced in Ohio, is clear and consistent with the authorities generally.

Stone v. Cuyahoga Light Co., 9 Ohio N. P. (N. S.) 545 (1909) Syllabus 5.—

"The use by the owner of an abutting lot of an excava-

tion beneath the sidewalk rests upon license or permission, and does not vest in the lot owner such juristic right as will enable him to prevent the placing of such steam pipe in and through such excavation, when authorized by the proper authorities."

In this case it was disclosed that N. O. Stone owned and occupied a building on the south side of Euclid Avenue, having a frontage of 50 feet. The basement extended 13 feet underneath the 19 foot sidewalk, furnishing a space 13 x 50 "of great value to him and his property." The City of Cleveland granted to The Cuyahoga Light Company, a public utility, the right to lay one of its steam pipes within the southerly side of Euclid Avenue underneath the sidewalk. This naturally would enter and go through the Stone storeroom and he sought to enjoin the company on the ground that what was contemplated was not a proper street use. The court, naturally, held it to be a proper street use on the theory that the legitimate use of the street by the public is not necessarily confined to its surface and (2) the Light Company was a public utility and, as such, entitled to use the public thoroughfares under permission of the municipal authorities. The court (George Phillips, J.) discusses at great length the rights of parties in public streets and then proceeds,—page 553—to discuss uses made of lands within the streets by private parties.

"There are other private uses habitually made of lands within highways—surface, supersurface and subsurface uses —that do not rest upon absolute right, but rest upon license or permission. These are more in the nature of privileges, and must at any time give way to public uses when needed. An abutting lot owner may, with the permission, or the mere acquiescence, of the municipal authorities, plant and maintain shade trees upon the street; he may in like manner make and maintain an excavation under the sidewalk; and he may in like manner maintain some structures over and above the surface of the street. * * *"

The court was thus speaking within a matter of six months following the decision of the Supreme Court of Ohio in the Kellogg case, infra., and on page 555 said this:

"Kellogg v. Traction Co. supra, is a case in which the city had given to the owner of property on opposite sides of the street, permission to construct a bridge over the street from one building to another belonging to the same party, far enough above the street's surface to give street clearance, and a taxpayer brought suit to enjoin the erection of such structure over the street. The Supreme Court held that such action

could not be maintained; that an abutting lot owner, making private use of part of the street—a use that does not interfere with any public use of the street, and doing this with the sanction of the municipal authorities—is immune from a taxpayer's suit to enjoin such use. The case deals with a mere license, and not with any easement appendant to an abutting lot; and it points the distinction between the two."

Kellogg v. The Cincinnati Traction Co. et al., 80 Oh St 331 (1909), syllabus:—

"The owner of lots abutting on opposite sides of the street may, under a license or permit from the city council, revocable at its pleasure, construct an overhead bridge for the purpose of transporting freight over the street and relieving the street of a serious obstruction to or interference with traffic along the street, the bridge being so constructed that its supports will not be in the street and so that it will not interfere with the light and air of adjoining abutting owners."

The City of Cincinnati, by ordinance, gave to two companies permission to construct and maintain across Eastern Avenue —one of the principal thoroughfares of the city—a bridge to enable them to transport coal from an elevator on one side of the street to a power house on the other side of the street. Kellogg brought a taxpayer's suit against the city and the two companies, seeking to enjoin the construction on the basis of his claim that the city lacked the power to grant such permission and that the execution and performance of such a contract would be an abuse of corporate power. One of the defendant companies was the owner in fee of the properties at both ends of the proposed bridge and the other company was the lessee of those properties. No part of the structure was to rest on any portion of Eastern Avenue as all supports were to be located on the properties of the defendants.

The court stated the issue to be decided in this form—page 342:

"The question for determination is, whether a city taxpayer may enjoin the construction by an abutter of a bridge over a street from his property on one side of the street to his property on the other, under an ordinance granting him the right to do so."

It would be difficult to use language that could more clearly and concisely state the issue in the cases at bar. Summers, J., in a lengthy opinion reviewed the authorities dealing with the question before the court and we shall refrain from quoting beyond this brief word from page 349:

"The easement for a street extends as far below, and as high above the surface of the ground, as is necessary for

street purposes, but if the abutter may for a useful purpose, and when the public is not inconvenienced, build an areaway in the street to the basement of his building or place structures under the street, he may subject to the same limitations place structures above the street."

The court held the ordinance valid and denied the injunction. Since the decision in the Kellogg case, the so-called Home Rule Amendment to the Constitution, Article XVIII, has been adopted. While it can well be doubted if it enlarged the powers of the city in the connection here involved, it certainly did not diminish them. The facts in the Kellogg case are the facts in these cases; the main question for determination is identical and it clearly states the law applicable to such a situation.

The court holds the ordinances involved in the two cases now being decided to be valid enactments and there being no claim that their terms and conditions have not been complied with and followed, the causes will be disposed of by the following entry in each case, this date:—

"Trial had; finding and judgment for defendants. Petition dismissed at the costs of the plaintiff. Bond for appeal fixed at $200.00."