RISPO INVESTMENT COMPANY et al., Appellees,

v.

CITY OF SEVEN HILLS et al., Appellants.

LUDWINSKI, Appellee,

v.

CITY OF SEVEN HILLS et al., Appellants.

[Cite as *Rispo Invest. Co. v. Seven Hills* (1993), 90 Ohio App.3d 245.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 62903, 62957 and 62898.

Decided Aug. 9, 1993.

246

*Ronald A. Rispo* and *Robert G. Shumay,* for appellees in case Nos. 62903 and 62957.

*Donald H. Powers* and *Susan L. Daugherty,* for appellees in case No. 62898.

*Allen A. Kacenjar,* Seven Hills Law Director, *Patrick F. Roche,* Fairview Park Director of Law, and *Lee Fisher,* Attorney General, for appellants.

*Hahn Loeser & Parks, Michael J. Garvin* and *Kim M. Hastings,* for amicus curiae Concerned Citizens of Seven Hills in case No. 62898.

KRUPANSKY, Judge.

## INTRODUCTION

The captioned cases have been combined for opinion since they present the same issues as designated in their assignments of error. This opinion, therefore, is determinative of all issues presented in App. Nos. 62903, 62957, consolidated, and 62898. For the orientation of the reader the cases herein have been designated as follows:

C.P. No. 207640/C.A. No. 62903    *Rispo Investment Co. and Albert A. Rispo v. City of Seven Hills;*

C.P. No. 207640/C.A. No. 62957    *Rispo Investment Co. and Albert A. Rispo v. City of Fairview Park;*

C.P. No. 201155/C.A. No. 62898    *Steven Ludwinski v. City of Seven Hills.*

The above three cases were consolidated in the common pleas court under case No. CV–207640. The two *Rispo* cases [1] have been consolidated on appeal. The *Ludwinski* case was not consolidated on appeal but was set for oral argument on the same day as the *Rispo* cases. The distinction between the cases follows:

(1) The *Rispo* cases did not proceed to or through the referendum process;

(2) The *Ludwinski* case did proceed through the referendum process and although the voters of the entire municipality approved of the rezoning ordinance, the voters of the ward most affected by the rezoning defeated the ordinance, thereby defeating Ludwinski's request to rezone his property.

In the trial court, all three cases challenged the constitutionality of the Seven Hills and Fairview Park city charter provisions.

In these consolidated cases, *viz.,* App. Nos. 62903 and 62957 and also in App. No. 62898, appellants city of Fairview Park and city of Seven Hills ("appellants") appeal from the trial court order granting appellees' motion for summary judgment in the cases *sub judice.* Appellees Rispo and Ludwinski instituted an action in the trial court for declaratory judgment seeking an order declaring

---

1. When references are made in this opinion to "Rispo" or "the *Rispo* cases," the opinion refers to appellees Rispo Investment Co. and Albert A. Rispo.

unconstitutional certain provisions of appellants' city charters dealing with voter approval of zoning changes. In granting appellees' motion for summary judgment, the trial court determined in its judgment entry in pertinent part as follows:

"Court finds the ward requirement for approval of zoning changes constitutes an unconstitutional delegation of legislative power."

Subsequently, the trial court signed a journal entry stating there was "no just cause for delay," therefore, these cases are remanded for further proceedings in accordance with law.

Simply stated, the main issue to be decided is whether the charter provisions of the cities of Seven Hills and Fairview Park violate the due process and equal protection provisions of the Fourteenth Amendment to the United States Constitution.

## THE RELEVANT FACTS

In the *Rispo* cases (C.P. No. 207640, App. Nos. 62903 and 62957), appellees are the owners of certain parcels of property zoned "single-family residential" located in appellant cities. On March 20, 1991, appellees filed a complaint for declaratory judgment in the Cuyahoga County Court of Common Pleas pursuant to R.C. Chapter 2721. In their complaint, appellees stated that appellants had adopted charters pursuant to R.C. 731.01 *et seq.* In count one, appellees alleged that appellant city of Seven Hills ("Seven Hills") had adopted a charter provision [2] (hereinafter, the "ward approval requirement") which stated as follows:

## "ARTICLE XIV

## "VOTER APPROVAL OF ZONING CHANGES

"SECTION 1. An ordinance, resolution, or other action, whether legislative or administrative in nature, *effecting a change in the zoning classification or district of any property* within the City of Seven Hills, Ohio, *shall not become effective* after the passage thereof, *until Council submits such ordinance, resolution or other action to the electorate* at a regularly scheduled primary or general election, occurring more than 60 days after the passage of the ordinance, resolution, or other action *and such ordinance, resolution or other action is approved by a majority of the electors voting thereon in this Municipality and*

---

2. In their complaint, appellees challenged only the charter provision section dealing with "zoning classification or district" of any property. A subsequent section dealing with "a change in the *uses* permitted in any zoning *use* classification or district" was not challenged in the complaint.

*in each ward in which the change is applicable to property in the ward.* (Amended 11–4–86)" (Emphasis added.)

In count two of the complaint, appellees alleged appellant city of Fairview Park ("Fairview Park") had adopted a charter provision[3] substantially the same as that of Seven Hills, which stated in pertinent part as follows:

"ARTICLE IV

"SECTION 16. VOTER APPROVAL OF ZONING CHANGES.

"(a) An ordinance, resolution, or other action, whether legislative or administrative in nature, *effecting a change in the zoning classification or district of any property* within the City of Fairview Park, Ohio, *shall not become effective* after the passage thereof, *until Council submits such ordinance, resolution or other action to the electorate* at a regularly scheduled election, occurring more than sixty (60) days after the passage of the ordinance, resolution, or other action *and such ordinance, resolution or other action is approved by a majority of the electors voting thereon, in this Municipality and in each ward in which the change is applicable to property in the ward."* (Emphasis added.)

In both counts of their complaint, appellees Rispo alleged their property had "long since lost its character as residential"; however, the ward approval requirements "would bar a change in zoning even though the majority of the voters of the City * * * may approve the change in zoning."

Also in both counts of their complaint, appellees further alleged both the zoning classifications of their property and the charter provisions "for successful passage of zoning changes are unconstitutional and represent a taking of private property without due compensation." Appellees therefore prayed for specific findings and relief as follows:

"(1) That the zoning ordinances and/or classifications providing for residential zoning are unconstitutional as applied to the property in issue;

"(2) That the Charter provisions of the City of Seven Hills and City of Fairview Park requiring voter approval are unconstitutional;

"(3) Enter an Order requiring that the subject property be zoned commercial/office; and

"(4) Such other equitable relief as this Court deems just and proper."

Prior to the filing of appellants' answers to the complaint, the *Rispo* appellees moved the trial court for an order consolidating their case with a case filed

---

**3.** See footnote 2.

previously in the Cuyahoga County Court of Common Pleas, *viz.*, case No. 201155, *Steven Ludwinski v. City of Seven Hills.* Plaintiff Ludwinski in case No. 201155 (App. No. 62898) likewise challenged the constitutionality of Section 1, Article XIV of the Charter of Seven Hills.

Appellant cities both filed answers to Rispo's complaint. Neither appellant city denied Rispo's properties were zoned "single-family residential." Appellants further admitted the existence and wording of the charter provisions at issue; however, appellants denied the provisions were unconstitutional. In their answers, appellants also asserted the affirmative defenses of failure to exhaust administrative remedies [4] and failure to state a claim upon which relief could be granted.

In the *Ludwinski* case (C.P. No. 201155, App. No. 62898), Ludwinski had presented a proposal to Seven Hills City Planning Commission in July 1986, requesting that his two and one-half acre parcel of property located on Rockside Road between Kuenzer Drive and North Crossview Drive be rezoned from single family "residential" use to "office district" use. The planning commission made an affirmative recommendation to city council; city council then approved the recommendation, passed a rezoning ordinance and placed the ordinance on the ballot for a referendum vote pursuant to the charter provision.

On November 3, 1987, the measure was approved by a majority of the voters city-wide, however, the ordinance did not receive an affirmative vote of the majority of the voters in the ward most affected by the rezoning and in which the property was located. Therefore, Ludwinski was denied the rezoning he sought.

On November 23, 1990, Ludwinski filed his complaint for declaratory judgment requesting appellant city of Seven Hills' ward approval requirement be declared unconstitutional. Ludwinski also requested the following relief: (1) the ordinance be declared adopted by the voters of Seven Hills as shown by the November 1987 election results; (2) his property be rezoned to office district use; and (3) the city engineer be ordered to amend the zoning map to reflect the approved zoning change.

Although Ludwinski opposed the Rispo appellees' motion to consolidate, the trial court granted the motion and the *Ludwinski* case was therefore consolidated with the *Rispo* case under case No. CV–207640.

---

4. The failure to exhaust administrative remedies alleged by appellant cities follows: appellees Rispo and Rispo Investment Co. neither sought a zoning change from the relevant city legislative bodies nor subjected their properties to the referendum process as had appellee Ludwinski. For purposes of this court's consideration of the issues on appeal this distinction is not relevant.

On June 20, 1991, appellee Ludwinski filed a motion for summary judgment. In his brief in support of the motion, Ludwinski asserted Seven Hills' charter provision granting the voters of "a single ward of a city the power to veto an amendment to the zoning classification of a particular parcel of land located in the ward" was an unconstitutional delegation of legislative power, conflicted with the general laws of Ohio, and denied equal protection of the law.

On July 9, 1991, appellees in the *Rispo* case filed a motion for "partial summary judgment." In their brief in support of the motion, appellees stated Sections 1 *and* 2, Article XIV of Seven Hills' charter [5] and Section 16, Article IV, subsections (a) *and* (b) of Fairview Park's charter [6] were at issue in the case. Appellees Rispo further stated the issue to be decided by the trial court as follows:

"Does a charter provision of a municipal corporation which requires approval of any changes *in the zoning classification or uses permitted* in a zoning classification by a majority of the general electorate and the electorate of the ward in which the affected property is located *violate the United States Constitution* [?]" (Emphasis added.)

In their brief in support of the motion for summary judgment, all appellees alleged the charter provisions at issue violated the due process requirements of the United States Constitution since the provisions delegated the power to control the use of private property to a "narrow segment of the community," *viz.*, the voters of the ward in which the property is located. Appellees also alleged the charter provisions denied equal protection of the laws.

In its brief in opposition to appellees' motions for summary judgment, Seven Hills justified its charter provisions on the ground that the charter provisions constituted a referendum procedure for the residents of a ward, "approximately one-fourth (¼) of the entire city population." Seven Hills further stated the charter provisions did not violate the Equal Protection Clause since they merely served "to recognize that residents in a ward where rezoning is contemplated are disproportionately impacted and that as residents of a ward they are an identifiable group of voters." Seven Hills concluded by stating the following: (1) the charter provisions were permitted pursuant to the Ohio Constitution's allowance of municipal "home rule"; (2) appellees Rispo had not exhausted their administrative remedies; and (3) appellees had purchased their properties with knowledge of the residential building classification.

All appellees filed replies to Seven Hills' brief in opposition. Appellees noted in their reply their assertion that municipal legislative procedures adopted

---

5. See Footnote 2.

6. See Footnote 2.

pursuant to the Ohio Constitution's "home rule" provision must not violate the United States Constitution. Appellees argued there were no "substantial or compelling reasons" to justify the ward approval requirement.

Since the cases had been consolidated, Fairview Park also filed a brief in opposition to the separate motions for summary judgment of Ludwinski and appellees Rispo. In its brief in opposition to the motions, Fairview Park stated its ward approval requirement was a valid exercise of local self-government. Fairview Park also argued appellees Rispo had not exhausted their administrative remedies.

On November 8, 1991, the trial court issued judgment entries in the cases *sub judice* which only stated as follows:

"Court finds the ward requirement for approval of zoning changes constitutes an unconstitutional delegation of legislative powers.

"Pl. mot [*sic*] for S.J. [*sic*] granted."

On November 25, 1991, another judgment by the trial court was entered on the docket in the cases *sub judice,* which stated the following:

"Court Finds the Ward Requirement For Approval of Zoning Changes Constituted an Unconstitutional Delegation of Legislative Power. Pltf [*sic*] Motion for Journal Entry Granted."

On December 6, 1991, Seven Hills filed in the *Rispo* case a notice of appeal from the judgment entry of November 25, 1991, which was designated in this court App. No. 62903. On December 18, 1991, Fairview Park filed in the *Rispo* case a separate notice of appeal designated App. No. 62957. App. Nos. 62903 and 62957 were subsequently consolidated in this court for briefing, hearing and disposition. Seven Hills also filed a separate appeal from the judgment entered in case No. 201155, *Ludwinski v. Seven Hills,* which was designated App. No. 62898.

On May 14, 1993, this court *sua sponte* remanded the cases *sub judice* to the trial court pursuant to Civ.R. 54(B); the order stated in pertinent part as follows:

"Review of trial court files * * * reveals * * * Rispo Investment brought claims challenging the current zoning classifications and ordinances relating to its property as well as the charter provision requiring ward approval of zoning changes. However, the claims challenging the current zoning ordinances were not resolved. In its motion for summary judgment filed July 9, 1991, Rispo Investment characterizes the motion as one for partial summary judgment and argues only the claims challenging the charter provisions, not the current zoning ordinances. The journal entry of November 8, 1991, granting the motion for summary judgment does not consider the current zoning ordinances, but solely

discusses the charter provisions. Additionally in Case No. 201155 Ludwinski requests relief * * * which were [*sic*] not directly addressed in the trial court's order. Accordingly, without the requisite Civ.R. 54(B) language, this court would be without jurisdiction to hear these matters."

On June 1, 1993, the trial court issued its judgment entry in the *Ludwinski* and the *Rispo* cases including the requisite Civ.R. 54(B) language stating the November 25, 1991 judgment was made upon an express determination there was "no just reason for delay." Therefore, this court now has jurisdiction to consider appellants' appeals on their merits. App.R. 4(C); Civ.R. 54(B); R.C. 2325.02; see, also, *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 526 N.E.2d 1350.

Prior to proceeding to address appellants' assignments of error this court notes the *Ludwinski* case, App. No. 62898, was heard on oral arguments as a companion case with the *Rispo* cases, consolidated App. Nos. 62903 and 62957. Since the issue to be decided by this court presented in the *Ludwinski* case is identical to the issue to be decided in the *Rispo* cases, this opinion therefore determines issues in all three cases, *viz.*, App. Nos. 62903, 62957 and 62898.

Appellants each present essentially the same assignment of error. In App. No. 62903 and App. No. 62898 (the appeals brought by the city of Seven Hills) and in App. No. 62957 (the appeal brought by the city of Fairview Park), respectively, the assignments of error state as follows:

"The common pleas court erred in granting appellee's motion for summary judgment on the basis that the ward clause provision of the Charter of the city of Seven Hills is an unconstitutional delegation of authority.

"The trial court erred in granting summary judgment in favor of the appellee and holding that the ward approval requirement for zoning changes [in Fairview Park] constitutes an unconstitutional delegation of legislative power."

These assignments of error have merit.

■ It must first be noted legislation enacted by a municipality is presumed to be valid and the enacting body is presumed to have acted constitutionally. *Xenia v. Schmidt* (1920), 101 Ohio St. 437, 130 N.E. 24. This presumption applies to municipal charter provisions. *State ex rel. Vana v. Maple Hts. City Council* (1990), 54 Ohio St.3d 91, 561 N.E.2d 909.

■ Since zoning provisions are enacted pursuant to a municipality's police powers, the burden to prove the unconstitutionality of a municipal charter zoning provision rests upon the one who challenges the provision. *Mayfield–Dorsh, Inc. v. S. Euclid* (1981), 68 Ohio St.2d 156, 22 O.O.3d 388, 429 N.E.2d 159; *Euclid v. Ambler Realty Co.* (1926), 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303. The challenger must demonstrate beyond fair debate that the zoning provision is

unreasonable and not substantially related to the public health, safety, morals or general welfare. *Columbia Oldsmobile, Inc. v. Montgomery* (1990), 56 Ohio St.3d 60, 564 N.E.2d 455.

The power of a municipality to establish zones, to classify property and to determine land use policy is a legislative function with which a court may not interfere unless the power is exercised in such an arbitrary, confiscatory or unreasonable manner as to be in violation of constitutional guarantees. *Franchise Developers, Inc. v. Cincinnati* (1987), 30 Ohio St.3d 28, 30 OBR 33, 505 N.E.2d 966. A municipality has a legitimate interest in aesthetics and preserving the *status quo. Hudson v. Albrecht, Inc.* (1984), 9 Ohio St.3d 69, 9 OBR 273, 458 N.E.2d 852. Moreover, enhancing property rights is an interest within the police power of a municipality. See, *e.g., Silverman v. Barry* (C.A.D.C.1988), 851 F.2d 434, at 437.

In the *Rispo* case, appellees filed no evidentiary material in the trial court but only a brief which supported their motion for summary judgment. In their brief, appellees argued appellants' ward approval charter provisions were unconstitutional on the following three grounds, *viz.:* (1) the charter provisions violated the due process guarantees of the Fourteenth Amendment to the United States Constitution in that they constituted an unlawful delegation of police power to a select group of individuals, *viz.,* the voters of a ward; (2) the charter provisions were in conflict with the general laws of Ohio; and (3) the charter provisions violated the Equal Protection Clause of the United States Constitution.

The trial court's judgment entry clearly states the "ward approval requirement" in each charter was determined to be unconstitutional on the first ground, *i.e.,* it constituted an unlawful "delegation of legislative power" in violation of the Fourteenth Amendment.

On appeal, appellant cities argue the ward approval requirement at issue in the cases *sub judice* cannot legitimately be held to be a *delegation* of legislative power since a referendum procedure is actually a *reservation* by the electorate to itself of legislative power otherwise given to a representative body. Appellants rely on *Eastlake v. Forest City Enterprises* (1976), 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132, in support of their argument. This court finds appellants' argument persuasive.

A constitution is a document of delegated powers; all powers not expressly delegated to agents or departments of government are deemed to remain with the people. *Id.; State ex rel. Bentley & Sons Co. v. Pierce* (1917), 96 Ohio St. 44, 117 N.E. 6; see, also, Section 1, Article II, Ohio Constitution.

In Ohio, "the sovereign people of the state expressly delegated to the sovereign people of the municipalities of the state full and complete political power in all

matters of 'local self-government.' " *Perrysburg v. Ridgway* (1923), 108 Ohio St. 245, at 255, 140 N.E. 595, at 598. Thus, Section 7, Article XVIII, Ohio Constitution states as follows:

"Any municipality may frame and adopt or amend *a charter for its government* and may, *subject to the provisions of section 3* of this article, *exercise* thereunder *all powers of local self-government.* (Adopted September 3, 1912.)" (Emphasis added.) [7]

The cities of Seven Hills and Fairview Park have by majority vote of the electorate adopted city charters pursuant to the Ohio Constitution, Section 7, Article XVIII.

However, the court stated in *State ex rel. Plain Dealer Publishing Co. v. Barnes* (1988), 38 Ohio St.3d 165, 527 N.E.2d 807, paragraph two of the syllabus, "[a] municipal charter vesting broad powers in the legislative body of a municipality may also contain specific prohibitions and restrictions upon the exercise of those powers."

Since the trial court did not determine the charter provisions in the case *sub judice* conflicted with the "general laws," *i.e.*, the statutes of Ohio, this court is not called upon to determine that issue. Cf. *Rispo Realty & Dev. Co. v. Parma* (1990), 55 Ohio St.3d 101, 564 N.E.2d 425.

One of the issues to be decided in all three cases is whether appellees provided sufficient evidence in their motions for summary judgment to demonstrate as they alleged that the "ward approval requirement" violated the United States Constitution. This court holds appellees did not since appellees Rispo attached no evidentiary material to their motion for summary judgment and Ludwinski attached as evidentiary material to his motion for summary judgment only the following: (1) Seven Hills' answers to requests for admissions in which Seven Hills admitted Ludwinski had gone through the referendum but denied his property should be rezoned; (2) a copy of the Seven Hills City Charter; and (3) a copy of R.C. 713.12. This material was insufficient to sustain their motions for summary judgment. *Euclid v. Ambler Realty Co., supra.*

In *Eastlake v. Forest City Enterprises, supra,* a landowner challenged a city charter provision which required that any change in land use agreed to by the city council must be approved by fifty-five percent of city voters in a referendum. In upholding the constitutionality of Eastlake's provision, the United States Supreme Court noted the following:

---

7. Section 3, Article XVIII, Ohio Constitution states as follows:

"Municipalities shall have authority to exercise *all powers of local self-government and to adopt and enforce within their limits such local police,* sanitary and other similar *regulations, as are not in conflict with general laws.* (Adopted September 3, 1912.)" (Emphasis added.)

"The conclusion that Eastlake's procedure violates federal constitutional guarantees rests upon the proposition that a zoning referendum involves a delegation of legislative power. *A referendum cannot, however, be characterized as a delegation of power.* Under our constitutional assumptions, all power derives from the people, who can delegate it to representative instruments which they create. See, *e.g.,* Federalist No. 39 (J. Madison). *In establishing legislative bodies, the people can reserve to themselves power* to deal directly with matters which might otherwise be assigned to the legislature. * * *

" * * * *

"The Ohio Supreme Court * * * concluded that the amendment to the city charter constituted a 'delegation' of power violative of federal constitutional guarantees *because the voters were given no standards to guide their decision.* Under Eastlake's procedure, the Ohio Supreme Court reasoned, no mechanism existed, nor indeed could exist, to assure that the voters would act rationally in passing upon a proposed zoning change. This meant that 'appropriate legislative action [would] be made dependent upon the potentially arbitrary and unreasonable whims of the voting public.' [*Forest City Enterprises v. Eastlake,*] 41 Ohio St.2d [187], at 195 [70 O.O.2d 384 at 388], 324 N.E.2d [740], at 746. The potential for arbitrariness in the process, the court concluded, violated due process.

"Courts have frequently held in other contexts that a *congressional delegation of power to a regulatory entity must be accompanied by discernible standards,* so that the delegatee's action can be measured for its fidelity to the legislative will. [Citations omitted.] Assuming, *arguendo,* their relevance to state governmental functions, these cases involved a delegation of power by the legislature to regulatory bodies, which are not directly responsible to the people; *this doctrine is inapplicable where,* as here, rather than dealing with a delegation of power, *we deal with a power reserved by the people to themselves.*

" * * * *

" * * * As a basic instrument of democratic government, *the referendum process does not, in itself, violate the Due Process Clause of the Fourteenth Amendment when applied to a rezoning ordinance.* Since the rezoning decision in this case was properly reserved to the people of Eastlake under the Ohio Constitution, the Ohio Supreme Court erred in holding invalid, on federal constitutional grounds, the charter amendment permitting the voters to decide whether the zoned use of respondent's property could be altered.

"The judgment of the Ohio Supreme Court is reversed * * *." (Emphasis added and footnotes omitted.) *Eastlake,* 426 U.S. at 672–680, 96 S.Ct. at 2361–2365, 49 L.Ed.2d at 137–141. See, also, *State ex rel. Kraus v. Halle Bros.* (1950), 45 O.O. 115, 100 N.E.2d 103.

The principle thus asserted in *Eastlake* has been relied upon by this court to uphold a charter provision requiring more than a simple favorable majority vote in order to approve a legislative proposal which would alter a property zoning classification. *Crow v. Brecksville* (Dec. 28, 1979), Cuyahoga App. No. 39875, unreported.

All appellees argue the addition of the ward approval requirement in the provisions at issue renders *Eastlake* inapplicable to the facts of the case *sub judice*. It is appellees' contention the earlier decisions of *Eubank v. Richmond* (1912), 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156, and *Seattle Title Trust Co. v. Roberge* (1928), 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210, are more analogous to the facts of the case *sub judice* and mandate appellants' charter provisions be declared invalid. *Eubank* and *Roberge*, however, were decided in 1912 and 1928, respectively, and are not supportive of appellees' position when considered in conjunction with the United States Supreme Court's more recent decisions of *Eastlake* decided in 1976 and *Lockport, infra*, decided in 1977. Moreover, *Eubank* and *Roberge* are both distinguishable; therefore, this court cannot agree with appellees' contention.

In *Eubank*, the Supreme Court held unconstitutional a municipal *ordinance* that permitted two-thirds of the *property owners* on any *block* to establish a building line that would limit new construction. Initially, *Eubank* is distinguishable because an ordinance was involved rather than a provision of a city charter under the doctrine of home rule. In *Eubank*, the city legislature was thus delegated a power by its people to determine zoning issues which it proceeded to delegate to an "ordinary" group of people. In the cases *sub judice*, however, the people of the cities have by *charter reserved* to *themselves* and to a smaller identifiable political subdivision,[8] *i.e.*, the people in the ward most affected by the proposed change, the right to ultimately decide zoning changes. The cases *sub judice* are thus more analogous to the decision upholding a similar procedure which was announced in *Lockport v. Citizens for Community Action* (1977), 430 U.S. 259, 97 S.Ct. 1047, 51 L.Ed.2d 313, although that case emphasized a constitutional analysis based upon equal protection principles.

Secondly, *Eubank* is distinguishable because, as cogently discussed in *Silverman v. Barry, supra*, there was no legitimate property interest protected by the law; *i.e.*, there was no *standard* until the property owners of the block fixed a property line. By contrast, in the case *sub judice*, there is already in place a standard exemplified by the *status quo* which the people of the municipality and

---

8. In Ohio, political subdivisions are recognized as having a legitimate interest in deciding local matters involving "police powers." See, *e.g.*, R.C. 4301.35 and 4303.29. These Revised Code sections permit a precinct to determine whether alcoholic beverages can be sold within the precinct.

of the ward affected have a legitimate interest in maintaining. *Hudson v. Albrecht, supra.*

Similarly, *Roberge* is distinguishable from the cases *sub judice* because it involved an *ordinance* and an *already existing* use of the land. In *Roberge,* the Supreme Court struck down a Seattle zoning ordinance that permitted philanthropic homes in one of the zoning districts only if two thirds of the property owners within four hundred feet of the building consented. The ordinance was obviously designed to prevent the replacement of an old building on property already being used for that purpose. If allowed to stand, the ordinance would have delegated authority from the legislature to a mere group of "neighbors" the right to deprive the owner of the *existing use* of the property. These facts are thus inapposite to those of the cases *sub judice* where the people of the appellant cities have *reserved* to themselves and also reserved to themselves as members of a smaller identifiable political subdivision which has a substantial interest in the matter the right to render a decision on proposed *changes* to the *status quo. State ex rel. Standard Oil Co. v. Combs* (1935), 129 Ohio St. 251, 2 O.O. 152, 194 N.E. 875; see, also, *Eskridge v. Sandusky* (C.P.1955), 73 Ohio Law Abs. 568, 136 N.E.2d 465.

Furthermore, neither *Eubank* nor *Roberge* involved an identifiable political subdivision such as those which exist in the cases *sub judice.*

In this regard, it is important to note that in *Lockport v. Citizens for Community Action, supra,* the United States Supreme Court upheld as constitutional the referendum process established by the New York Constitution which provided that new county charters could not be adopted unless approved by both a majority of the voting city dwellers and a majority of the voting noncity dwellers. The process was challenged by noncity voters only on the ground it violated the Equal Protection Clause of the Fourteenth Amendment. Nevertheless, the court's reasoning is applicable to the city charter provisions *sub judice.*

If passed, the new county charter proposed in *Lockport* would operate to reallocate the existing governing and service powers between the city and its neighboring towns and villages. The United States Supreme Court noted the city had traditionally possessed more power than its neighboring towns and villages, therefore, since the proposed charter would operate to direct proportionately more power away from the city, the city dwellers would be "disproportionately impacted." In analyzing this situation, the United States Supreme Court stated in pertinent part as follows:

" * * * In a referendum, the expression of voter will is direct, and there is no need to assure that the voters' views will be adequately represented * * * in the legislature. * * * [T]he referendum puts one discrete issue to the voters. That issue is capable, at least, of being analyzed to determine whether its adoption or

rejection will have a *disproportionate impact on a identifiable group of voters.* If it is found to have such a disproportionate impact, the question is then whether a State can recognize that impact either by limiting the franchise to those voters specially affected or by giving their votes a special weight. * * *" (Emphasis added.) *Lockport*, 430 U.S. at 266, 97 S.Ct. at 1052, 51 L.Ed.2d at 321.

In declaring the dual majority voting measure constitutional, the court further stated the following:

" * * * [S]eparate voter approval requirements are *based on the perception that the real and long-term impact of a restructuring of local government is felt quite differently by the different county constituent units* that in a sense compete to provide similar government services. *Voters in these constituent units are directly and differentially affected by the restructuring of county government,* which may make the provider of public services more remote and less subject to voters' individual influence.

"*The provisions* of New York law here *in question no more than recognize the realities of these substantially differing electoral interests.* Granting to these provisions the *presumption of constitutionality* to which every duly enacted state and federal law is entitled, we are unable to conclude that they violate the Equal Protection Clause of the Fourteenth Amendment." (Emphasis added and footnotes omitted.) *Id.* at 271–273, 97 S.Ct. at 1055–1056, 51 L.Ed.2d at 324–325.

*Lockport* therefore permits dual majority voting in the context of a referendum where it can be predicted that an identifiable group of voters, *e.g.,* in the cases *sub judice* the residents of the ward, will be disproportionately impacted. See, also, *Silverman v. Barry, supra.* Appellants' city-wide and ward approval requirements are thus consistent with the referendum procedure upheld in *Lockport* under the Equal Protection Clause of the United States Constitution.

■ The preceding analysis demonstrates that although appellees argue the ward approval requirement impermissibly "gives absolute, unconfined and undirected power to both legislative and administrative action of the city" to a "minority" of residents, in actuality it is a procedure for reserving to the people of the municipality their power to approve a change in the existing zoning standards. There is nothing in the United States Constitution or the law as promulgated by the United States Supreme Court which indicates a consent procedure such as a referendum which exists in the cases *sub judice* is an impermissible "delegation of legislative power." See, *e.g., Silverman v. Barry, supra; Cusack Co. v. Chicago* (1917), 242 U.S. 526, 37 S.Ct. 190, 61 L.Ed. 472; *Lockport v. Citizens for Community Action, supra.* Moreover, since appellees bought their properties with knowledge of the existing restrictions, they failed to

meet their burden to prove the charter provisions constituted a taking of their property without due process of law. *Crow v. Brecksville, supra.*

Therefore, the trial court erred in granting appellees' motion for summary judgment based upon its finding the charter provisions "constituted an unconstitutional delegation of legislative power."

Accordingly, appellants' assignments of error are sustained.

The judgments of the trial court are reversed and these cases are remanded for further proceedings consistent with this opinion.

*Judgments reversed*
*and causes remanded.*

NAHRA, P.J., and PARRINO, J., concur.

THOMAS J. PARRINO, J., retired, of the Eighth Appellate District, sitting by assignment.