GRAY ET AL., APPELLANTS, *v.* TRUSTEES, MONCLOVA TOWNSHIP ET AL., APPELLEES.

(No. 73-831—Decided June 26, 1974.)

*Mr. Joseph P. Sheehy,* for appellants.
*Messrs. Doyle, Lewis & Warner, Mr. Thomas D. Smith*
and *Mr. William H. Heywood, III,* for appellees.

O'NEILL, C. J. Under traditional concepts of zoning, a political subdivision is divided into a number of zoning districts by the local legislative body, which also establishes uniform rules concerning allowable type, size and location of buildings within a given district. Each improvement within a zoning district must comply with the same legislative specifications, unless a variance is sought and granted. Recently, however, the popularity of large-scale residential projects has engendered a new mode of zoning, variously referred to as Planned Unit Development (PUD), or Community Unit Plan (CUP). PUD zoning permits those aspects of land development which are normally regulated by zoning to vary within a geographically defined area bearing a single zoning classification. Within the PUD there may be found single-family dwellings, multi-family units, schools, open spaces, recreational facilities and other collateral nonresidential uses. In short, a PUD is often a self-contained, although not necessarily politically separate, community.[1] The present litigation involves a PUD in Monclova Township, Lucas County.

Section 9-A-1 of the Monclova Township Zoning Resolutions provides, in part:

"In view of the trend toward the development of group houses, planned neighborhoods, shopping centers or other planned developments intended for greater convenience or utility, which may necessitate variations from existing zoning classifications or regulations, such variations may be permitted provided that a plat showing location of building and yard requirements is first approved by the [zoning] commission. Upon approval by the board of trustees

---

[1] A general discussion of PUD zoning can be found in the following: Annotation, Zoning: Planned Unit, Cluster or Greenbelt Zoning, 43 A. L. R. 3d 888; Symposium, 114 U. of Pa. L. Rev. 2; Johnston, Developments in Land Use Control, 45 Notre Dame Lawyer 399.

and the filing of such plat with the county recorder, such changes shall be, and become part of the zoning regulations, subject to such further changes as may be made in the prescribed manner."

In 1966, the Board of Trustees of Monclova Township utilized this legislative scheme to approve a planned development known as Byrnwyck. In the years following, the area was developed as a residential community containing single-family and multi-family units. Additionally, the development contained two golf courses and an associated clubhouse site, on which was to be located a clubhouse, swimming pool, putting green, tennis facilities and parking area. The golf courses and clubhouse facilities were always owned by one of the several developers named as parties defendants in this case,[2] who operated them on a "country club" basis, available only to dues-paying members. Although residence in Byrnwyck was not a prerequisite to membership, it is clear that a major purpose of the country club was to provide recreational facilities to the residents of the PUD.

The country club eventually turned into a financial debacle. The problem was attributed to the small membership, which was allegedly caused by a lack of facilities. To remedy this situation, appellees requested the Monclova Township Zoning Commission to consider an amendment to the PUD plat approved in 1966.[3] Specifically, appellees sought

[2]The facilities were owned by appellee-developer Byrnwyck Associates, Inc., until April 1972. At that time, ownership was acquired by Byrnwyck II, an Ohio limited partnership. Byrnwyck II is the present owner of the facilities. Since the interests of the various developers in this case are substantially identical, and since the Board of Trustees of Monclova Township, although named as a party defendant, did not actively participate in this litigation, the term "appellees" will hereinafter be used to refer collectively to the various nonpublic defendant-developers.

[3]Although the board of township trustees had to approve any amendment to existing zoning, the amendment procedure could be initiated by requesting the zoning commision to approve an amendment application.

to amend the plat to reflect their intentions to expand the clubhouse, erect a facility for outdoor tennis and swimming which could be covered with an air-pressure canopy during winter months, relocate and enlarge the parking area, and attach to the clubhouse seven "corporate condominium structures." This last proposal was the litigation-producing element in this case.

As originally envisioned by appellees, four contiguous "corporate condominium" structures would be built on a line running northeast from the clubhouse, with the most southerly of the four attached to the north side of the clubhouse. Three contiguous units would be placed south of the clubhouse, with the most northerly of the three attached to the south side of the clubhouse. Appellees subsequently eliminated from their plans one of the four structures to the north of the clubhouse, and hence the plan which eventually was judicially challenged involved six "corporate condominium" structures, each two and one-half stories in height.

The structures would contain a total of 100 individual suites. Each suite would have several beds that could be folded into the wall, thereby converting the room into a meeting area. Some suites would also be equipped with kitchen facilities. Although their plans were somewhat nebulous, appellees apparently intended to sell suites mainly to business firms. Membership in the country club would be a prerequisite to the purchase of a suite. The suites would not be permanently occupied, but would be used by their owners or the owners' guests when they were in the Toledo area. According to one of appellees' witnesses, the facilities were "designed to be used by the members as a business facility * * * similar to any board room in any company * * *."

The zoning commission referred the amendment request to the Lucas County Planning Commission for review. That agency recommended that the request be denied unless the proposed condominiums were eliminated therefrom. This recommendation was not followed. The zoning com-

mission and, subsequently, the Board of Trustees of Monclova Township, approved appelleees' request without significant modification.

Appellants, all residents of Byrnwyck, promptly instituted the present litigation in the Court of Common Pleas, seeking a declaration of the rights of the parties under the original 1966 PUD plat and the above-described amendment thereto. The Court of Common Pleas, holding that the amendment was an arbitrary and unreasonable exercise of the legislative power possessed by the township trustees, declared the board's zoning resolution invalid and entered judgment for appellants. The Court of Appeals reversed the judgment of the Court of Common Pleas, and this court allowed appellants' motion to certify the record.

An analysis of the relevant law, as applied to the facts of the instant case, leads this court to reverse the judgment of the Court of Appeals.

Under Monclova's zoning laws, the location of buildings and yard requirements must appear on a PUD plat submitted to the board of trustees for approval. Once approved by the board and filed with the county recorder, the specific development plans disclosed on the plat become part of the township's zoning regulations; that is, the developer must, unless an amendment is granted, comply with these plans. Section 9-A-1 of the zoning resolution, *supra.* Hence, the action of the board in approving such a plat is the functional equivalent of traditional legislative zoning, even though the entire PUD area is covered by the same "nominal" zoning classification both before and after approval of the plat.[4] Similarly, the approval by the township trustees of an application to amend a previously approved PUD plat is equivalent to legislative rezoning, even though there is no change in the nominal zoning.

Although PUDs represent a relatively recent zoning

---

[4] The overall zoning classification in a PUD area can be termed "nominal" because it does not, by itself, indicate the specific zoning restrictions in the area. These restrictions are ascertainable only by referring to the approved plats for the development.

technique, the general rules established for judicial review of more traditional zoning legislation are fully adequate to guide a court in striking a balance between the competing interests that clash in a PUD amendment case. One such rule, which is applicable to this case, is that one who acquires and improves property has no contractual or constitutional right to have the zoning which existed in the area at the time of the improvement remain the same. See *Curtiss* v. *Cleveland* (1957), 166 Ohio St. 509, 144 N. E. 2d 177. Therefore, the mere fact that the Byrnwyck plat, at the time appellants became residents in the development, did not indicate plans for "corporate condominiums" on the clubhouse site does not invalidate the amendment challenged in this case. However, the marketing of PUDs, such as Brynwyck, often places major emphasis upon the availability of open spaces and recreational areas "built in" the community. Therefore, the reasonable expectations of persons that the use of these areas will not be radically altered after they become residents of the PUD are relevant evidence when such an alteration is challenged.

Another guiding principle in this case is that the legislative action of the township trustees in amending the 1966 plat comes into court clothed with a presumption of validity. *Willott* v. *Beachwood* (1964), 175 Ohio St. 557, 197 N. E. 2d 201; *Curtiss* v. *Cleveland* (1959), 170 Ohio St. 127, 163 N. E. 2d 682. The burden of removing that presumption is on the party challenging it—in this case, the appellants. This burden is met by producing evidence which clearly demonstrates that the amendment is not reasonably related to the public health, welfare, safety or morals.

The appellants have satisfied their burden of proof in this case. Evidence was adduced that the 1966 Byrnwyck plat set aside a portion of the land for nonresidential use as the location for a golf course, clubhouse and various other recreational facilities, such as a swimming pool and tennis facilities. By approving this plat, the township trustees made a legislative determination in 1966, not challenged by any party, that the public health, welfare, safety

and morals required that the clubhouse site be used for nonresidential purposes.

Instead of an unexpected change of conditions in the area, which is often the factor motivating a legislative authority to amend existing zoning regulations, Byrnwyck has been developed into a major residential community in Monclova Township. This development has followed the path laid out by the legislatively approved 1966 plat. Nevertheless, the amendment approved by the township trustees will allow the appellees to significantly alter the use restriction placed on the clubhouse site in 1966. Under the amendment, the site will no longer be used primarily for the benefit of the permanent residents of Byrnwyck, but will instead be partially transformed into a site of "corporate condominiums" to be temporarily inhabited by transitory businessmen. This court concludes that appellants have rebutted the presumption of validity that originally surrounded the amendment. The trial court's conclusion that the amendment was an unreasonable exercise of the legislative power possessed by the Board of Trustees of Monclova Township was justified.

For the reasons stated, the judgment of the Court of Appeals is reversed, and the judgment of the Court of Common Pleas is affirmed.

*Judgment reversed.*

HERBERT, CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.