[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 132.]

THE STATE EX REL. CROSSMAN COMMUNITIES OF OHIO, INC. ET AL. *v*. GREENE COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. Crossman Communities of Ohio, Inc. v. Greene Cty. Bd. of Elections*, 1999-Ohio-308.]

*Elections—Prohibition—Writ sought to prohibit Greene County Board of Elections from conducting the November 2 election on the referendum issue dealing with the Indian Ridge development plan—Writ denied, when.*

(No. 99-1605—Submitted September 29, 1999—Decided October 5, 1999.)

IN PROHIBITION.

_____

{¶ 1} Herbruck Farm consists of approximately 80.5 acres of land located in the city of Fairborn, Greene County, Ohio. Relators Bank One Trust Company, N.A., and Robert A. Herbruck are cotrustees of an undivided half-interest in approximately 78.5 acres of Herbruck Farm, and Robert A. Herbruck is the sole trustee of the other half-interest in those 78.5 acres. Faircreek Church, Inc. ("Faircreek") owns the remaining two acres of Herbruck Farm.

{¶ 2} Before 1999, relator Crossman Communities of Ohio, Inc. ("Crossman") contracted to purchase Herbruck Farm from the trustees and Faircreek in order to develop a community of single-family residential homes to be known as Indian Ridge. At the time that Crossman contracted to purchase Herbruck Farm, the property was zoned AG, Agricultural District, under the Fairborn Zoning Code. Crossman applied to rezone the property to PD-1, Planned Residential District.

{¶ 3} Following extensive public hearings conducted by the Fairborn Planning Board and the Fairborn City Council, the city council enacted Resolution No. 3-99 on February 1, 1999. Resolution No. 3-99 approved Crossman's amended

concept plan for Indian Ridge and rezoned Herbruck Farm from AG, Agricultural District, to PD-1, Planned Residential Development District, subject to over thirty specified conditions.  Resolution No. 3-99 became effective on March 3, 1999.

{¶ 4} On April 19, 1999, the city council enacted Resolution No. 39-99, which approved Crossman's preliminary development plan for Indian Ridge subject to six specified conditions.  On June 7, 1999, the city council enacted Resolution No. 59-99, which approved Crossman's final development plan for Indian Ridge subject to six conditions.

{¶ 5} On June 17, intervening respondents Teresa F. Little and Ruth Ann Eppley filed an unsigned referendum petition with the office of the Fairborn Clerk/Finance Director.  The referendum petition contained the following pertinent language:

"The following is a full and correct copy of the title and number of the Ordinance:

"Ordinance No. 59-99

"CITY OF FAIRBORN, OHIO

"SPONSORED BY COUNCIL MEMBER TERWOORD ON THE 7TH OF JUNE 1999.

"TITLE: APPROVING THE FINAL DEVELOPMENT PLAN DESIGNATED AND KNOWN AS INDIAN RIDGE SECTION 1

"(SEE ATTACHED RESOLUTION)

"THE PROPERTY SUBJECT OF RESOLUTION NO. 59-99 IS ALSO MARKED ON THE ATTACHED MAP

"THE ISSUE PRESENTED IS:  SHALL AMENDED RESOLUTION NO. 59-99 ATTACHED, APPROVING THE FINAL DEVELOPMENT PLAN OF RON ROOZE OF CROSSMAN COMMUNITIES, THE DEVELOPER, DESIGNATED AND KNOWN AS INDIAN RIDGE, SECTION 1 BE APPROVED?"

**{¶ 6}** Attached to the referendum petition was a full and correct copy of Resolution No. 59-99. The copy contained the Fairborn Clerk/Finance Director's signature, which was located under "ATTEST:". The copy, however, did not contain the notation that the copy was "CERTIFIED TO BE A TRUE COPY OF THE ORIGINAL ON FILE IN MY OFFICE," which other copies of original records in the custody of the Clerk/Finance Director contained.

**{¶ 7}** On July 6, the signed referendum petition was filed with the Clerk/Finance Director, and on July 28, respondent Greene County Board of Elections ("board") certified to the Clerk/Finance Director that the petition contained a sufficient number of valid signatures to be placed on the ballot. After relators, Crossman and the trustees, advised the Clerk/Finance Director that they disputed the validity of the referendum petition, the Clerk/Finance Director certified the petition to the board for its review, stating:

"The referendum petition seeks to place on the November 1999 ballot the approval of the Final Development Plan for Section 1 of the Indian Ridge development. While the City has always considered such approvals to be administrative rather than legislative actions and as such not subject to referendum, I feel that it is beyond my purview to make that determination in relation to this referendum petition."

**{¶ 8}** In early August, relators, Crossman and the trustees, filed written protests to the referendum petition with the board. Relators claimed in their protests that the petition was defective because Resolution No. 59-99 was not subject to referendum, since it constituted administrative rather than legislative action and the petitioners had failed to submit a certified copy of the resolution, as required by R.C. 731.32.

**{¶ 9}** On August 11, intervening respondents, referendum petitioners, and owners of property neighboring Indian Ridge who are opposed to the planned development filed a complaint in the Court of Appeals for Greene County for a writ

of mandamus to compel the board, Fairborn, and certain Fairborn officials to submit Resolution No. 59-99 to the Fairborn electors at the November 2 general election. The court of appeals issued an alternative writ ordering the board to perform its duties under R.C. 731.29 with respect to the referendum petition or to show cause why it should be relieved of such duties. Relators subsequently moved to intervene as respondents in the mandamus action.

{¶ 10} On August 24, the board held a quasi-judicial hearing on relators' protests. At the conclusion of the hearing, the board denied the protests and decided to place the petition issue on the November 2 election ballot. Relators then withdrew their motions to intervene in the mandamus action. At an August 26 status conference in the mandamus action, the parties' counsel indicated that they would enter a joint stipulation of dismissal of the case.

{¶ 11} On August 27, relators, Crossman and the trustees, filed this action for a writ of prohibition to prevent respondent board from conducting the November 2 election on the referendum issue. Relators subsequently filed an amended complaint, and intervening respondents filed a motion to intervene and an answer. On September 3, respondent board filed an answer to relators' amended complaint. On September 7, the date that relators' evidence and brief were due under S.Ct.Prac.R. X(9), relators and respondent board stipulated to an extension to September 13 for relators to file their evidence and brief. Relators had been informed by the Clerk's Office of this court that their limited stipulated extension was permissible under our Rules of Practice. We subsequently granted intervening respondents' motion to intervene, and they filed a motion to dismiss the case for want of prosecution pursuant to S.Ct.Prac.R. X(9) and (11). The parties also filed evidence and briefs.

{¶ 12} This cause is now before the court for its determination under S.Ct.Prac.R. X(9).

---

*O'Diam, McNamee & Hill Co., L.P.A.*, *Michael P. McNamee* and *David M. McNamee*, for relator Crossman Communities of Ohio, Inc.

*Roger E. Bloomfield*, for relators Bank One Trust Company, N.A. and Robert A. Herbruck, Cotrustees, and Robert A. Herbruck, Trustee.

*William F. Schenk*, Greene County Prosecuting Attorney, *Stephen K. Haller* and *Suzanne M. Schmidt*, Assistant Prosecuting Attorneys, for respondent Greene County Board of Elections.

*Dwight D. Brannon & Associates*, *Dwight D. Brannon* and *Kevin A. Bowman*, for intervening respondents.

―――――――――――――

*Per Curiam.*

{¶ 13} We initially reject intervening respondents' contention that this expedited election case should be dismissed for want of prosecution because relators did not file their evidence and brief within the time specified by S.Ct.Prac.R. X(9). Relators entered into a limited stipulated extension with respondent board pursuant to S.Ct.Prac.R. XIV(3)(B)(2)(a) and X(8), which extended their time to September 13 to file their evidence and brief. After construing S.Ct.Prac.R. X(9) *in pari materia* with these provisions and emphasizing that relators confirmed their interpretation of the rule with the Clerk's Office, that the only opposing party at the time—the board—agreed to the stipulation, and that the stipulation was limited to an extremely brief period of time, dismissal pursuant to S.Ct.Prac.R. X(9) and (11) is not warranted. The intervening respondents' assent to the extension was not required because they were not parties at the time the stipulation was entered into.

{¶ 14} We also reject intervening respondents' additional preliminary argument that dismissal is appropriate because relators failed to list the addresses of all of the parties in their amended complaint, as intervening respondents claim is required under Civ.R. 10(A). As relators note, S.Ct.Prac.R. X(4)(A) requires that

only the name, title, and address of the respondent are necessary in an original action complaint filed in this court. Relators' complaint complied with S.Ct.Prac.R. X(4)(A). The spirit of our Rules of Practice, much like the Rules of Civil Procedure, favors the resolution of cases upon their merits rather than upon claimed pleading deficiencies. See, generally, *Cecil v. Cottrill* (1993), 67 Ohio St.3d 367, 372, 618 N.E.2d 133, 137.

{¶ 15} Having thus rejected intervening respondents' arguments claiming pleading deficiencies, we now address the merits of relators' claimed entitlement to a writ of prohibition.

{¶ 16} In order to be entitled to the requested writ of prohibition, relators must establish that (1) the board of elections is about to exercise judicial or quasi-judicial power, (2) the exercise of such power is not legally authorized, and (3) if the writ is denied, they will suffer injury for which no other adequate remedy in the ordinary course of law exists. *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections* (1997), 80 Ohio St.3d 302, 305, 686 N.E.2d 238, 241. Regarding the first two requirements, in extraordinary actions challenging the quasi-judicial decision of a board of elections, the applicable standard is whether the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions. *E. Ohio Gas Co. v. Wood Cty. Bd. of Elections* (1998), 83 Ohio St.3d 298, 300, 699 N.E.2d 916, 918. And despite respondents' contentions to the contrary, the board exercised quasi-judicial authority in denying relators' protests to the referendum petition following an evidentiary hearing, and prohibition may issue to prevent the placement of names or issues on a ballot even though a protest hearing has been completed, as long as the election has not yet been held. R.C. 3501.39(A)(2); *Cooker Restaurant Corp.*, 80 Ohio St.3d at 306, 686 N.E.2d at 242; *Christy v. Summit Cty. Bd. of Elections* (1996), 77 Ohio St.3d 35, 37, 671 N.E.2d 1, 3; *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections* (1995), 72 Ohio St.3d 289, 291, 649 N.E.2d 1205, 1207.

{¶ 17} Relators contend that the board abused its discretion and acted in clear disregard of applicable law by denying their protests and placing the referendum issue on the November 2 ballot. In support of their contention, relators claim that Resolution No. 59-99 is an administrative act not subject to referendum, and the referendum petition failed to contain an attached certified copy of Resolution No. 59-99 as required by R.C. 731.32.

{¶ 18} Section 1f, Article II of the Ohio Constitution provides initiative and referendum powers only on questions that municipalities "may now or hereafter be authorized by law to control by legislative action." See, also, Section 8.01, Article XVIII, Fairborn Charter, which specifies that "[t]he provisions for the Initiative and Referendum in municipal corporations, now in force or hereafter enacted, as prescribed by the laws of the State of Ohio, shall govern." Section 1f, Article II excludes administrative actions taken by a municipal legislative authority from referendum proceedings. *Buckeye Community Hope Found. v. Cuyahoga Falls* (1998), 82 Ohio St.3d 539, 697 N.E.2d 181, paragraph three of the syllabus; *Myers v. Schiering* (1971), 27 Ohio St.2d 11, 14, 56 O.O.2d 6, 8, 271 N.E.2d 864, 866.

{¶ 19} "The test for determining whether the action of a legislative body is legislative or administrative is whether the action taken is one enacting a law, ordinance or regulation, or executing or administering a law, ordinance or regulation already in existence." *Donnelly v. Fairview Park* (1968), 13 Ohio St.2d 1, 42 O.O.2d 1, 233 N.E.2d 500, paragraph two of the syllabus. Consequently, if the action creates a law, it is legislative and subject to referendum, but if the action executes or administers an existing law, the action is administrative and not referendable. See *Buckeye Community Hope Found. v. Cuyahoga Falls* (1998), 82 Ohio St.3d 539, 544, 697 N.E.2d 181, 185.

{¶ 20} More specifically, in applying the foregoing test to zoning cases involving planned unit development ("PUD"), we have held that "the *implementation of a PUD*, as well as its creation, *is a legislative act* subject to

referendum" because the action of approving a plat is the functional equivalent of traditional legislative zoning, although the entire PUD area is covered by the same nominal zoning classification both before and after the approval of the plat. (Emphasis added.) *State ex rel. Zonders v. Delaware Cty. Bd. of Elections* (1994), 69 Ohio St.3d 5, 11, 630 N.E.2d 313, 317-318; *Peachtree Dev. Co. v. Paul* (1981), 67 Ohio St.2d 345, 351, 21 O.O.3d 217, 220, 423 N.E.2d 1087, 1092; *Gray v. Trustees of Monclova Twp.* (1974), 38 Ohio St.2d 310, 314, 67 O.O.2d 365, 367, 313 N.E.2d 366, 369.

{¶ 21} In accordance with the foregoing precedent, Resolution No. 59-99 constituted a referendable, legislative act because it implemented the PUD by approving the final development plan for Indian Ridge.

{¶ 22} Relators next contend that the referendum petitioners violated R.C. 731.32, which provides:

"Whoever seeks to propose an ordinance or measure in a municipal corporation by initiative petition or files a referendum petition against any ordinance or measure shall, before circulating such petition, file a certified copy of the proposed ordinance or measure with the city auditor or the village clerk.

"As used in this section, 'certified copy' means a copy containing a written statement attesting that it is a true and exact reproduction of the original proposed ordinance or measure or of the original ordinance or measure."

{¶ 23} Relators claim that the Clerk/Finance Director's signature beneath the word "ATTEST" on the copy of the resolution was insufficient to comply with the R.C. 731.32 requirement of a "certified copy." While we require strict compliance with R.C. 731.32, verification and certification are both sufficient. See *State ex rel. Shaw v. Lynch* (1991), 62 Ohio St.3d 174, 175-176, 580 N.E.2d 1068, 1069, construing former R.C. 731.32. "Attest" means "to certify to the verity of a copy of a public document formally by signature" and an attested copy of a document is "one which has been examined and compared with the original, with

a certificate or memorandum of its correctness, signed by the persons who have examined it." Black's Law Dictionary (6 Ed.1990) 127-128. Accordingly, the City Clerk/Finance Director's original signature attesting the copy of the resolution complied with R.C. 731.32. Notably, relators attempt to introduce evidence that they did not present to the board at the protest hearing to support their argument. The board, however, could not have abused its discretion or clearly disregarded applicable law based on evidence that was never presented to it. Relators should have presented such evidence to the board, but they failed to do so.

{¶ 24} Based on the foregoing, the board neither abused its quasi-judicial discretion nor clearly disregarded applicable law by denying relators' protests to the referendum petition. Therefore, relators are not entitled to the writ of prohibition to prevent the referendum election.[1] Our holding is consistent with the general precepts favoring the right of electors to vote on these important issues. See *Christy v. Summit Cty. Bd. of Elections*, 77 Ohio St.3d at 40, 671 N.E.2d at 5, quoting *State ex rel. King v. Portsmouth* (1986), 27 Ohio St.3d 1, 4, 27 OBR 73, 75, 497 N.E.2d 1126, 1128 (" '[P]rovisions for municipal initiative or referendum should be liberally construed in favor of the power reserved so as to permit rather than preclude the exercise of such power, and the object sought to be attained should be promoted rather than prevented or obstructed' "); *State ex rel. Taft v. Franklin Cty. Court of Common Pleas* (1998), 81 Ohio St.3d 480, 481, 692 N.E.2d 560, 562 ("[C]ourts should be very reluctant to interfere with elections, except to enforce rights or ministerial duties as required by law"). Accordingly, we deny the writ.

*Writ denied*.

MOYER, C.J., RESNICK and F.E. SWEENEY, JJ., concur.

---

1. By so holding, we need not determine whether relators established that they lacked an adequate remedy in the ordinary course of law because even if they did, they are not entitled to the writ.

DOUGLAS, J., concurs in judgment.

COOK, J., dissents.

LUNDBERG STRATTON, J., dissents.

PFEIFER, J., not participating.

_____

**COOK, J., dissenting.**

{¶ 25} I respectfully dissent from the judgment addressing the merits of relators' prohibition claim and denying the writ. For the following reasons, the court should grant intervening respondents' motion and dismiss the cause.

{¶ 26} S.Ct.Prac.R. X(9) provides:

"Because of the necessity of a prompt disposition of an original action relating to a pending election, and in order to give the Supreme Court adequate time for full consideration of the case, if the action is filed within 90 days prior to the election, the respondent shall file a response to the complaint within five days after service of the summons. *Unless otherwise ordered by the Supreme Court, relator shall file any evidence and a merit brief in support of the complaint within three days following the response*, respondent shall file any evidence and a merit brief within three days after the filing of relator's merit brief, and relator may file a reply brief within three days after the filing of respondent's merit brief." (Emphasis added.)

{¶ 27} Under S.Ct.Prac.R. X(9), relators' evidence and brief were due on September 7. Relators, however, entered into a stipulation with respondent board, purportedly pursuant to S.Ct.Prac.R. XIV(3)(B)(2)(a) and X(8), which they claimed extended the time to September 13 to file their evidence and brief.

{¶ 28} Relators' attempted stipulated extension did not extend the time to file their evidence and merit brief. S.Ct.Prac.R. X(9) manifestly required relators to file their evidence and brief within three days of the board's answer "[u]nless

10

otherwise ordered by the Supreme Court." We *did not order* an extension of the briefing and evidence schedule in S.Ct.Prac.R. X(9) in this case.

{¶ 29} In addition, the stipulated extension provision of S.Ct.Prac.R. XIV(3)(B) does not apply to expedited election matters, which are governed by S.Ct.Prac.R. X(9). Even if the language of the pertinent rules were ambiguous on this point, the Staff and Committee Notes to the 1996 amendment to the general extension provision specify that "[t]he [1996] amendment to S.Ct.Prac.R. X, Section 9, to impose directly in the rules a schedule for briefing expedited election cases, deliberately sets an abbreviated schedule *which should not be extended by a general rule*." (Emphasis added.) Staff and Committee Notes to 1996 amendment to S.Ct.Prac.R. XIV(3). Therefore, the *general* rule of S.Ct.Prac.R. XIV(3)(B)(2) permitting stipulated extensions of up to twenty days for parties to file briefs and evidence in Supreme Court cases does not apply to expedited election matters, which are governed by their own *special* provision, S.Ct.Prac.R. X(9).

{¶ 30} Further, this result comports with the mandatory duty of extreme diligence and promptness in election matters. *State ex rel. The Ryant Commt. v. Lorain Cty. Bd. of Elections* (1999), 86 Ohio St.3d 107, 113, 712 N.E.2d 696, 701. The purpose of S.Ct.Prac.R. X(9) "is to incorporate an expedited schedule for the presentation of evidence and briefs in election cases filed in that time period to assist the court in resolving such cases promptly." *State ex rel. SuperAmerica Group v. Licking Cty. Bd. of Elections* (1997), 80 Ohio St.3d 182, 187, 685 N.E.2d 507, 511. This purpose is not furthered by circumventing the manifest language of our rules and the intent specified in the associated commentary by permitting parties to delay our resolution of election cases up to forty or more days by stipulating to extensions. Here, the two stipulated extensions used by relators and the board extended the S.Ct.Prac.R. X(9) briefing schedule by ten additional days. We have held that a delay for as brief a period as nine days can preclude our

consideration of the merits of an expedited election case. See *Paschal v. Cuyahoga Cty. Bd. of Elections* (1995), 74 Ohio St.3d 141, 656 N.E.2d 1276.

{¶ 31} Finally, any mistaken advice by the Clerk's Office and the board's conduct in stipulating to relators' attempted extension does not estop this court from holding that the attempted stipulation was unwarranted and invalid. See, *e.g., State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections* (1997), 80 Ohio St.3d 302, 307, 686 N.E.2d 238, 242, citing *State ex rel. Chevalier v. Brown* (1985), 17 Ohio St.3d 61, 63, 17 OBR 64, 66, 477 N.E.2d 623, 625 (" 'The principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function' ").

{¶ 32} Based on the foregoing, relators did not file their evidence and brief within the time required by S.Ct.Prac.R. X(9). Therefore, this case must be dismissed under S.Ct.Prac.R. X(11) ("Unless all evidence is presented and the relator's brief is filed within the schedule issued by the Supreme Court, an original action *shall be dismissed for want of prosecution*"). (Emphasis added.) See, also, *SuperAmerica*, 80 Ohio St.3d at 183, 685 N.E.2d at 508; *State ex rel. Vornholt v. Ohio Dept. of Transp.* (1999), 85 Ohio St.3d 1470, 709 N.E.2d 508. We should apply, rather than ignore, the mandatory language of our own rules. See, *e.g., State ex rel. Cuyahoga Cty. v. State Personnel Bd. of Review* (1998), 82 Ohio St.3d 496, 499, 696 N.E.2d 1054, 1057, where we observed that courts lack authority to ignore the plain language of provisions under the guise of interpretation or liberal or narrow construction. Because the court does not dismiss this cause pursuant to the plain language of S.Ct.Prac.R. X(9) and (11), and in accordance with the manifest intent and policy underlying these rules, I respectfully dissent.

———————————