**Louis STILE, Trustee of the Louis Stile Trust, Plaintiff,**

v.

**COPLEY TOWNSHIP, OHIO, et al., Defendants.**

**No. 5:00 CV 1309.**

United States District Court, N.D. Ohio, Eastern Division.

June 8, 2000.

---

Amie L. Bruggeman, Stephen W. Funk, Roetzel & Andress, Akron, OH, for Louis Stile, Trustee of The Louis Stile Trust, plaintiff.

Irving B. Sugerman, Joseph R. Spoonster, III, Goldman & Rosen, Akron, OH, Todd M. Raskin, Kimberly A. Brennan, Mazanec, Raskin & Ryder, Solon, OH, Robert A. Edwards, Akron, OH, for defendants.

Orville L. Reed, III, Buckingham, Doolittle & Burroughs, Akron, OH, Irving B. Sugerman, Joseph R. Spoonster, III, Todd M. Raskin, Kimberly A. Brennan, Robert A. Edwards, (See above), for Craig Marshall, Copley Township Zoning Commission, defendant.

## MEMORANDUM OPINION AND ORDER
(Resolving Doc. Nos. 5 and 29)

DOWD, District Judge.

Before the Court is plaintiff's motion for preliminary injunction, as supplemented and supported. (Doc. No. 5, with Nos. 4 and 14). Defendants have submitted a memorandum in opposition, with supporting documentation (Doc. No. 13), and the plaintiff has filed his reply (Doc. No. 30). The parties have also filed a joint stipula-

tion with supporting documentation.[1] (Doc. No. 18).[2]

On June 7, 2000, after notice to all parties and with all parties represented, the Court conducted a hearing on the preliminary injunction motion.[3] Plaintiff presented the testimony of one witness and both sides supplemented the arguments that had been briefed. This Memorandum Opinion and Order is issued pursuant to Fed.R.Civ.P. 65(d). For the reasons and under the terms discussed below, plaintiff's motion for preliminary injunction (Doc. No. 5) is GRANTED.

## I. INTRODUCTION

On May 24, 2000, plaintiff Louis Stile, as Trustee of the Louis Stile Trust, filed a complaint pursuant to 42 U.S.C. §§ 1983 and 1988 against Copley Township, Ohio, members of the Township Board of Trustees,[4] the Copley Township Zoning Commission, members of the Zoning Commission,[5] and the Township Zoning Inspector.[6] The complaint alleges that the defendants have acted "to deprive a private citizen of the lawful and permitted use of his property without due process of law."

1. Plaintiff filed transcripts of the depositions of Henry Jaroszewski, a member of the Copley Township Zoning Commission (Doc. No. 15) and of Lori Salser, the Township Zoning Inspector (Doc. No. 16).

2. Defendants have subsequently filed a motion to dismiss (Doc. No. 29), arguing that this Court must dismiss this action on abstention grounds. Plaintiff promptly filed a response (Doc. No. 31); no further briefing is required. The motion has no merit, see Baskin v. Bath Township Bd. Of Zoning Appeals, 15 F.3d 569 (6th Cir.1994), and is DENIED.

3. The preliminary injunction hearing was originally convened on May 31, 2000. At that time, the parties represented to the Court that they might be able to reach a resolution without further judicial intervention. It was agreed that the temporary restraining order would be extended and the preliminary injunction hearing continued to June 7, 2000 to allow some time for the parties to continue their attempts at settlement.

4. The Board of Trustees is alleged to be the chief governing body of the Township. Each

(Compl.¶ 1). Plaintiff sought and was granted a temporary restraining order.[7] He further sought a preliminary and permanent injunction, compensatory and punitive damages, and attorney fees and costs.

## II. FACTUAL BACKGROUND

In 1972, the Louis Stile Trust (hereafter "Stile") became the owner of about 317 acres of undeveloped rural property located on the southwest quadrant of the intersection of 1–77 and State Route 18 in Copley Township ("the Township") in Summit County, Ohio. In January 1984, when the property now in question was zoned R–2 (residential), Stile requested that the Township re-zone the property for commercial use. In particular, he requested a C–4 zoning classification which permits, inter alia, commercial businesses involved in community regional retail, such as grocery stores, wholesale establishments, and automobile dealerships. (Stile Aff. [Doc. No. 4], ¶ 2). See Copley Township Zoning Regulations, § 423 (Doc. No. 18, Joint Ex. 4).

In response to this request, Township officials recommended to Stile that the

of the three trustees (Dale Panovich, Scott D. Dressler, and Patrick J. Fick) are sued individually and in their official capacities. (Compl.¶ 6).

5. The Township Zoning Commission is alleged to be an administrative body established pursuant to Ohio Rev.Code § 519.04. Four of the commissioners (Craig Marshall, Paul Wilkerson, Lorie Mathias, and Henry Jaroszewski) are sued in both their individual and official capacities. The fifth commissioner (Ramona Edminister) is sued in only her official capacity.

6. The Zoning Inspector (Lori Salser) was originally sued in both her individual and official capacities. On June 1, 2000, plaintiff filed a notice of dismissal of the individual capacity suit against Salser; only the official capacity suit continues. See Doc. No. 25.

7. See Motion (Doc. No. 3) and Temporary Restraining Order (Doc. No. 6), both dated May 24, 2000. See also Order of June 1, 2000 (Doc. No. 26) extending the temporary restraining order.

property be zoned as a "Planned Development District" or "PDD," a then relatively new zoning classification which would honor Stile's request for commercial zoning while preserving some of the property for non-commercial uses.[8] (Stile Aff. ¶ 3). In connection with this proposed reclassification, Stile's representatives worked closely with Township officials to prepare a "Comprehensive Development Plan" or "CDP" for the proposed PDD. In June 1984, with Stile's approval,[9] the property was zoned as a PDD and the CDP was adopted. Under the Township Zoning Regulations, the PDD became subject to Section 450, dealing exclusively with Planned Development Districts.

Although most of the property in the new PDD was intended for residential use, approximately 30.4 acres, located immediately off I–77 on State Route 18, were designated for commercial use, including business/office, community/regional retail, and convenience/personal service. (Stile Aff. ¶ 4). *See* Copley Township Zoning Map (Doc. No. 18, Joint Ex. 5) and Comprehensive Development Plan 77–18 (Doc. No. 18, Joint Ex. 6).[10]

Since 1984, approximately 116 acres have been developed by Stile for residential use and approximately 120 acres remain for future residential development.

(D. Stiles Aff. [Doc. No. 14, Ex. C], ¶ 2). By July 2004, when the semi-annual payments on the property will be complete, Stile will have invested over $1,400,000.00 to bring sewer and water to the residential community there. (D. Stiles Aff. ¶ 3).

In the mid–1980's, Stile sold several acres of the commercially-zoned property, leaving him with the 22.04 acres of property which underlie the instant dispute. In 1993–94, those acres were divided into 11 sub-lots and a road was constructed. Extensive marketing efforts were expended in 1994–95. (D. Stiles Aff. ¶ 5). Even so, until recently, Stile has been unable to find a buyer for those remaining acres.[11] In 1999, an agent for a holding company of General Motors Corporation ("GMC") approached Stile with an offer to buy the property for use as automobile dealerships. (D. Stile Aff. ¶ 7; Stile Aff. ¶ 7). There is no question that this was a permitted use under the Township zoning regulations and the CDP. (Salser Dep. at 18–21, 40). This was even confirmed in writing by the Township Zoning Inspector. *See* Letter of December 21, 1999 (Doc. No. 18, Joint Ex. 10). In reliance on the existing zoning classification, on July 8, 1999, Stile and GMC entered into an option purchase agreement for the property. (Stile Aff. ¶ 9).[12] The option must be exercised on or before July 8, 2000 and it is conditioned upon there being proper zoning.

**8.** A PDD is "planned to integrate residential, commercial, industrial, or any other use[ ]" within the same area. Ohio Rev.Code § 519.021.

**9.** Under Ohio law, planned-unit developments cannot be established without the consent of the property owner. *See* Ohio Rev.Code § 519.021.

**10.** In their brief in opposition to the motion, defendants assert that when Stile sought reclassification of the property back in 1983–84, he represented that he envisioned its use for retail/office space "similar to that of Liberty Commons with retail on the first floor and office space upstairs." Doc. No. 13, at 1. *See also,* Minutes of Zoning Commission, Doc. No. 13, Ex. A, B and C. It seems that it is defendants' view that this representation somehow estops Stile from trying to pursue any other kind of commercial venture in that

location. However, there can be no doubt that the CDP which was ultimately approved included three commercial use groups: business/office, community/regional retail, and convenience retail/personal services. *See* Doc. No. 18, Joint Ex. 6. Therefore, any representations which may have been made by Stile are not relevant. He may legally use the property for *any* of the permitted uses.

**11.** In 1995, Stile entered into a contract with Cedarwood Development for the sale of the entire parcel, subject to obtaining all government approvals. That deal fell through because the Summit County Council rejected a request to vacate a street on the property. (D. Stile Aff. ¶ 6; Stile Aff. ¶ 6).

**12.** Stile also claims reliance on the Zoning Inspector's affirmative statement in the letter of December 21, 1999. (Stile Aff. ¶ 9). How-

In order for the requisite site plan review to be completed by the Township and for the property to be utilized for the proposed dealerships, it had to first be re-platted. The eleven lots had to be reconfigured into four and several utility easements had to be vacated.[13] According to proper procedure, a request was made for re-platting. This was reviewed by the Summit County Planning Commission and ultimately approved. The Summit County Prosecuting Attorney determined that the re-platting could be handled by the Planning Commission but that the question of vacating easements had to be presented to the Summit County Council for approval. That was done and the Council denied the request to vacate the easements. Plaintiff has stipulated that this denial has been appealed to the Summit County Court of Common Pleas.

As time passed, it became apparent that a number of homeowners in the area were strongly opposed to Stile's plan to sell the property to GMC for car dealerships. GMC met with these people at the suggestion of one of the Trustees. Eventually, on February 14, 2000, the Zoning Commission conducted a hearing on a re-zoning request submitted by a number of property owners. The request was summarily denied because only two of the three owners of the subject property had joined in the request. Stile was the third owner who had not joined. The Zoning Commission indicated at that meeting that re-zoning was not done without the owner's consent.

On March 6, 2000, an application for a zoning certificate, along with a site plan showing the reconfigured lots (11 reduced to 4), was submitted to the Zoning Inspector so that construction of the proposed dealership could begin.[14] (Stile Aff. ¶ 10; Salser Dep. at 31–33).[15] Although the certificate usually issues (or is denied in writing) within 30 days of the application, to date no action has been taken on that application. In fact, the Zoning Inspector testified at her deposition that, since the site plan accompanying the application must be reviewed by multiple agencies in Summit County, she decided to "sit on" the application and to conduct only a preliminary review of the zoning issues presented therein. (Salser Dep. at 34–37, 40).

On April 18, 2000, Stile received a notice from the Township Zoning Commission advising that written and oral testimony would be accepted at a special meeting to be held on May 1, 2000 "to consider a REDESIGNATION of Heritage Centre Allotment (PDD), consisting of 22 + acres . . . ." (Public Hearing Notice [Doc. No. 18, Joint Ex. 11]).[16] The hearing

---

ever, since the option contract was entered into several months earlier, any such reliance would not have been possible.

**13.** Plaintiff's witness at the preliminary injunction hearing was Eric McGrew, who represents GMC in the purchase of the property. He testified that the easements are purely "paper" easements, as no utilities have yet been installed except for a sewer line between lots 10 and 11.

**14.** Although the vacation of the easements remained an issue, Mr. McGrew testified that GMC believed that would be resolved and would not be an insurmountable obstacle to its plans.

**15.** Mr. McGrew testified that GMC hired GPD Associates to work up a site plan, that GPD did so with the Township Zoning Inspector's assistance, and that the site plan which was submitted was specifically designed so as to require no variances.

**16.** The Notice was dated April 17, 2000 and stated in its entirety:

> Dear Property Owner:
> PUBLIC HEARING NOTICE
> The Copley Township Zoning Commission will hold a special meeting on Monday, May 1st at 5:00 p.m. at Copley Town Hall, 1540 S. Cleve–Mass. Road to consider a REDESIGNATION of Heritage Centre Allotment (PDD), consisting of 22 + acres, located at the southeast corner of Heritage Woods Drive and Rt. 18. Written and oral testimony will be accepted at this public hearing.
> Sue Schultz, Secretary

It is conceded that there was no evidence or testimony presented at the hearing by Stile; however, Mr. McGrew testified that, although

went forward on May 1, 2000, and the Commission voted 3–1 (with the Chairman not voting) to eliminate "community/regional sales" from the categories of permitted uses for the property, thereby also eliminating any chance for an automobile dealership at the site. (Stile Aff. ¶¶ 11–12). GMC has indicated that it presently intends not to exercise its option to purchase the subject property, unless the action of the Zoning Commission can be reversed in the near future. (Stile Aff. ¶ 14). Accordingly, plaintiff seeks a preliminary injunction to prevent application of the new zoning to his property.

### III. STANDARD FOR PRELIMINARY INJUNCTION

■ Under applicable Sixth Circuit precedent, a court must consider four factors in determining whether it should grant an injunction:

(1) whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;

(2) whether the plaintiffs have shown irreparable injury;

(3) whether the issuance of a preliminary injunction would cause substantial harm to others;

(4) whether the public interest would be served by issuing a preliminary injunction.

*Mason County Medical Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir.1977). The Court may not mechanically weigh the four factors set out in *Mason County*. No single factor is determinative, and the Court should weigh each of the factors in light of the factual circumstances of the case. *See Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537–38 (6th Cir. 1978), *cert. dismissed*, 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979).

■ In *Roth*, the Sixth Circuit held that where a plaintiff makes a strong showing of irreparable harm, the injunction may issue on a lesser showing of a likelihood of prevailing on the merits. *Id.* In a case involving great irreparable harm, then, an injunction could issue on a showing that the plaintiff has raised questions that are "fair ground for litigation." *Id.* at 537; *see Brandeis Machinery & Supply Corp. v. Barber–Greene Company*, 503 F.2d 503, 505 (6th Cir.1974). It follows that the showing of a strong likelihood of prevailing on the merits will enable a court to issue an injunction despite a lesser showing of irreparable harm. *See Roth*, 583 F.2d at 537–38 (quoting *Metropolitan Detroit Plumbing & Mechanical Contractors Ass'n v. Dept. of Health, Education and Welfare*, 418 F.Supp. 585, 586 (E.D.Mich. 1976)). *See also Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261 (6th Cir. 1985); *In re DeLorean Motor Co.*, 755 F.2d 1223 (6th Cir.1985); *Van Drivers Union Local No. 392 v. Neal Moving & Storage*, 551 F.Supp. 429 (N.D.Ohio 1982).

### IV. DISCUSSION

A township's authority to zone property derives exclusively from state law, specifically, Ohio Revised Code Chapter 519. *Yorkavitz v. Bd. of Township Trustees of Columbia Township*, 166 Ohio St. 349, 351, 142 N.E.2d 655 (1957). Under Ohio Rev. Code § 519.12, a township has no authority to enact substantive zoning changes unless it follows the very specific procedures set forth therein. Section 519.12 provides, in relevant part, as follows:

(A) Amendments to the zoning resolution may be initiated by motion of the township zoning commission, by the passage of a resolution therefor by the board of township trustees, or by the

---

he attended the meeting and was aware that it was to deal with the "redesignation" of the Heritage Centre Allotment, he had no idea what that meant. In his view, it was not possible to come to the meeting prepared with testimony. At the preliminary injunction hearing, counsel for the defendants conceded that "redesignation" is not a term of art and that it has no universally-understood meaning. Thus, it is this Court's conclusion that the notice was insufficient as a matter of law. No one, based on that notice alone, could have reasonably come prepared to present testimony.

filing of an application therefor by one or more of the owners or lessees of property within the area proposed to be changed or affected by the proposed amendment with the township zoning commission.... The board of township trustees shall upon the passage of such resolution certify it to the township zoning commission.

Upon the adoption of such motion, or the certification of such resolution or the filing of such application, the township zoning commission shall set a date for a public hearing thereon, which date shall not be less than twenty nor more than forty days from the date of the certification of such resolution or the date of adoption of such motion or the date of the filing of such application. Notice of such hearing shall be given by the township zoning commission by one publication in one or more newspapers of general circulation in the township at least ten days before the date of such hearing.

Subsections (B), (C) and (D) indicate in great detail the nature and content of the required written notice.[17] Subsection (E) provides:

(E) Within five days after the adoption of such motion or the certification of such resolution or the filing of such application the township zoning commission shall transmit a copy thereof together with text and map pertaining thereto to the county or regional planning commission, if there is such a commission.

---

**17.** These sections provide:

B) If the proposed amendment intends to rezone or redistrict ten or fewer parcels of land, as listed on the county auditor's current tax list, written notice of the hearing shall be mailed by the zoning commission, by first class mail, at least ten days before the date of the public hearing to all owners of property within and contiguous to and directly across the street from such area proposed to be rezoned or redistricted to the addresses of such owners appearing on the county auditor's current tax list. The failure of delivery of such notice shall not invalidate any such amendment.

(C) If the proposed amendment intends to rezone or redistrict ten or fewer parcels of land as listed on the county auditor's current tax list, the published and mailed notices shall set forth the time, date, and place of the public hearing, and shall include all of the following:

(1) The name of the zoning commission that will be conducting the public hearing;

(2) A statement indicating that the motion, resolution, or application is an amendment to the zoning resolution;

(3) A list of the addresses of all properties to be rezoned or redistricted by the proposed amendment and of the names of owners of these properties, as they appear on the county auditor's current tax list;

(4) The present zoning classification of property named in the proposed amendment and the proposed zoning classification of such property;

(5) The time and place where the motion, resolution, or application proposing to amend the zoning resolution will be available for examination for a period of at least ten days prior to the public hearing;

(6) The name of the person responsible for giving notice of the public hearing by publication or by mail, or by both publication and mail;

(7) Any other information requested by the zoning commission;

(8) A statement that after the conclusion of such hearing the matter will be submitted to the board of township trustees for its action.

(D) If the proposed amendment alters the text of the zoning resolution, or rezones or redistricts more than ten parcels of land, as listed on the county auditor's current tax list, the published notice shall set forth the time, date, and place of the public hearing, and shall include all of the following:

(1) The name of the zoning commission that will be conducting the public hearing on the proposed amendment;

(2) A statement indicating that the motion, application, or resolution is an amendment to the zoning resolution;

(3) The time and place where the text and maps of the proposed amendment will be available for examination for a period of at least ten days prior to the public hearing;

(4) The name of the person responsible for giving notice of the public hearing by publication;

(5) A statement that after the conclusion of such hearing the matter will be submitted to the board of township trustees for its action;

(6) Any other information requested by the zoning commission.

The county or regional planning commission shall recommend the approval or denial of the proposed amendment or the approval of some modification thereof and shall submit such recommendation to the township zoning commission. Such recommendation shall be considered at the public hearing held by the township zoning commission on such proposed amendment.

The township zoning commission shall, within thirty days after such hearing, recommend the approval or denial of the proposed amendment, or the approval of some modification thereof and submit such recommendation together with such application or resolution, the text and map pertaining thereto and the recommendation of the county or regional planning commission thereon to the board of township trustees.

The board of township trustees shall, upon receipt of such recommendation, set a time for a public hearing on such proposed amendment, which date shall not be more than thirty days from the date of the receipt of such recommendation from the township zoning commission. Notice of such public hearing shall be given by the board by one publication in one or more newspapers of general circulation in the township, at least ten days before the date of such hearing.

Subsections (F) and (G) set forth in detail the nature and content of the notice that must be issued for the hearing required by (E).[18] Finally, Subsection (H) provides:

(H) Within twenty days after such public hearing the board shall either adopt or deny the recommendations of the zoning commission or adopt some modification thereof. In the event the board denies or modifies the recommendation of the township zoning commission the unanimous vote of the board shall be required.

Such amendment adopted by the board shall become effective in thirty days after the date of such adoption unless within thirty days after the adoption of the amendment there is presented to the board of township trustees a petition, signed by a number of registered electors residing in the unincorporated area of the township or part there-

18. These notice subsections provide:

F) If the proposed amendment intends to rezone or redistrict ten or fewer parcels of land as listed on the county auditor's current tax list, the published notice shall set forth the time, date, and place of the public hearing and shall include all of the following:

(1) The name of the board that will be conducting the public hearing;

(2) A statement indicating that the motion, application, or resolution is an amendment to the zoning resolution;

(3) A list of the addresses of all properties to be rezoned or redistricted by the proposed amendment and of the names of owners of these properties, as they appear on the county auditor's current tax list;

(4) The present zoning classification of property named in the proposed amendment and the proposed zoning classification of such property;

(5) The time and place where the motion, application, or resolution proposing to amend the zoning resolution will be available for examination for a period of at least ten days prior to the public hearing;

(6) The name of the person responsible for giving notice of the public hearing by publication or by mail, or by both publication and mail;

(7) Any other information requested by the board.

(G) If the proposed amendment alters the text of the zoning resolution, or rezones or redistricts more than ten parcels of land as listed on the county auditor's current tax list, the published notice shall set forth the time, date, and place of the public hearing, and shall include all of the following:

(1) The name of the board that will be conducting the public hearing on the proposed amendment;

(2) A statement indicating that the motion, application, or resolution is an amendment to the zoning resolution;

(3) The time and place where the text and maps of the proposed amendment will be available for examination for a period of at least ten days prior to the public hearing;

(4) The name of the person responsible for giving notice of the public hearing by publication;

(5) Any other information requested by the board.

of included in the zoning plan equal to not less than eight per cent of the total vote cast for all candidates for governor in such area at the most recent general election at which a governor was elected, requesting the board of township trustees to submit the amendment to the electors of such area for approval or rejection at a special election to be held on the day of the next primary or general election. Each part of this petition shall contain the number and the full and correct title, if any, of the zoning amendment resolution, motion, or application, furnishing the name by which the amendment is known and a brief summary of its contents. In addition to meeting the requirements of this section, each petition shall be governed by the rules specified in section 3501.38 of the Revised Code.

The form of a petition calling for a zoning referendum and the statement of the circulator shall be substantially as follows: [Forms omitted].

Thus, Ohio law provides for very clear procedures requiring review by and opportunity to be heard by multiple layers of government (i.e., the zoning commission, the county or regional planning commission, and ultimately the township board of trustees, plus the possibility of a referendum) before a zoning resolution can be amended.

The Township argues that the disputed action here is not governed by Section 519.12. As ground for this argument, the Township points to Ohio Rev.Code § 519.021 which provides as follows:

A township zoning resolution or amendment adopted in accordance with this chapter may establish or modify planned-unit developments. Planned-unit development regulations shall apply to property only at the election of the property owner and shall include standards to be used by the board of township trustees or, if the board so chooses, by the township zoning commission, in determining whether to approve or disapprove any proposed development within a planned-unit development. The planned-unit development shall further the purpose of promoting the general public welfare, encouraging the efficient use of land and resources, promoting greater efficiency in providing public and utility services, and encouraging innovation in the planning and building of all types of development. Within a planned-unit development, the township zoning regulations, where applicable, need not be uniform, but may vary in order to accommodate unified development and to promote the public health, safety, morals, and the other purposes of this section.

Planned-unit developments may be included in the township zoning resolution under one of the following procedures:

(A) The board of township trustees may adopt planned-unit development regulations that do not automatically apply to any property in the township, but establish standards that will apply to property that becomes part of a planned-unit development as provided in this division. Property owners who wish to have planned-unit development regulations apply to their property may apply to have the zoning map amended pursuant to section 519.12 of the Revised Code to rezone their property as a planned-unit development and no longer subject to any previously applicable zoning regulations. Once property has been rezoned as a planned-unit development, subsequent development on that property shall comply with the planned-unit development regulations as determined by the board of township trustees or township zoning commission, as applicable. *After the designation of the property as a planned-unit development on the zoning map, any approval or disapproval of subsequent use or development of property in a planned-unit development as being in compliance with regulations established as authorized by this division shall not be considered to be an amendment or supplement to a township zoning resolution*

*for the purpose of section 519.12 of the Revised Code, but may be appealed pursuant to Chapter 2506 of the Revised Code.*

(B) Upon the application of property owners, the board of township trustees may establish a planned-unit development for their property, designating the property as a planned-unit development on the zoning map in accordance with the procedures set forth in section 519.12 of the Revised Code, and simultaneously adopting regulations as part of that same procedure that will apply only to that planned-unit development. Within that development, property is subject to the planned-unit development regulations and not to any other zoning regulations. Compliance with the planned-unit development regulations shall be determined by the board of township trustees or township zoning commission, as applicable. *After the designation of the property as a planned-unit development on the zoning map and the simultaneous adoption of regulations that will apply only to that planned-unit development, any approval or disapproval of subsequent use or development of property in a planned-unit development as being in compliance with regulations established as authorized by this division shall not be considered to be an amendment or supplement to a township zoning resolution for the purpose of section 519.12 of the Revised Code, but may be appealed pursuant to Chapter 2506 of the Revised Code.*

(C) Pursuant to section 519.12 of the Revised Code, the board of township trustees may adopt planned-unit development regulations and amend the zoning map to rezone property as planned-unit developments. Any other zoning regulations and zoning district that exist at the time a planned-unit development district is established under this division continue to apply within the planned-unit development district unless the board or the township zoning commission approves an application of an owner of property within the district to subject the owner's property to planned-unit development regulations under this division. Such an application shall be made in accordance with the planned-unit development regulations and shall include a development plan that complies with the planned-unit development regulations. Upon receiving such an application, the board of township trustees or township zoning commission, as applicable, shall determine whether the application and plan comply with the planned-unit development regulations. The board's or commission's determination shall not be considered to be an amendment to a township zoning resolution for purposes of section 519.12 of the Revised Code, but may be appealed pursuant to Chapter 2506 of the Revised Code. If the board or commission makes a final determination that the plan included in the application complies with the planned-unit development regulations or, if the board's or commission's final determination is one of noncompliance then if a court of competent jurisdiction makes a final nonappealable order finding compliance, the board or commission, as applicable, shall approve the application and upon approval shall cause the zoning map to be changed so that any other zoning district that applied to the property that is the subject of the owner's application no longer applies to that property. The removal of the prior zoning district from the zoning map is a ministerial act and shall not be considered to be an amendment or supplement to a township zoning resolution for the purposes of section 519.12 of the Revised Code and may not be appealed pursuant to Chapter 2506 of the Revised Code.

Nothing in this section prevents a board of township trustees from authorizing a planned-unit development as a conditional use in the zoning resolution pursuant to section 519.14 of the Revised Code.

As used in this section, "planned-unit development" means a development which is planned to integrate residential, commercial, industrial, or any other use. Ohio Rev.Code § 519.021 (emphases added).

The Township points to Section 1102 of its Zoning Regulations, purportedly adopted pursuant to Ohio Rev.Code § 519.021, for its authority to amend the CDP in the manner that it did. Section 1102–1 (Procedures for Amendment) provides:

A CDP adopted by the Zoning Commission for any Planned Development District may be amended or modified, by the Commission at any regular or special meeting, but only upon publication of notice of the proposed change, including a brief description of same, in a newspaper of general circulation in the Township and upon written notice being provided by regular mail to each owner of record of undeveloped property within the District, at its tax address, at least ten (10) days prior to the meeting at which the amendment is to be considered.

Doc. No. 18, Joint Ex. 4, at 214.[19]

█ The Township argues that, because of the emphasized language, *supra*, in Ohio Rev.Code § 519.021, its Board of Trustees had the authority to delegate authority to the Zoning Commission to amend the CDP.

In this Court's view, the emphasized language in the statute above refers only to the ordinary *administration* of both the general PDD regulations and the CDP established for the particular PDD involved in this case. The statutory language does not justify *changes* to the CDP made unilaterally by the Township, nor does it permit the Zoning Commission to, in essence, enact zoning amendments.

In *Peachtree Development Co. v. Paul*, 67 Ohio St.2d 345, 351, 423 N.E.2d 1087 (1981), the Ohio Supreme Court held that both the creation and implementation of a planned unit development governed by § 519.021 are legislative acts because they are the functional equivalent of traditional legislative zoning. The *Peachtree* court noted:

"[t]he overall zoning classification in a PUD [PDD] area can be termed 'nominal' because it does not, by itself, indicate the specific zoning restrictions in the area. *These restrictions are ascertainable only by referring to the approved plats [i.e., CDP] for the development.*"

*Peachtree*, 67 Ohio St.2d at 352, 423 N.E.2d 1087 (quoting *Gray v. Trustees, Monclova Township.*, 38 Ohio St.2d 310, 314 n. 4, 313 N.E.2d 366 (1974)) (emphasis added).

█ In order for the property to be initially zoned as a PDD, Stile's consent was required and the Township Trustees had to take legislative action under the procedures set forth in Ohio Rev.Code § 519.12. It is inconceivable that the Township would be required by law to follow these specific procedures to effect the original PDD classification, but would have the authority thereafter to "amend" or "modify" the accompanying CDP merely by passing a zoning regulation like Section 1102–1 purporting to give the Township Zoning Commission such authority. In this Court's view, § 1102–1 is void because it contravenes Chapter 519 of the Ohio Revised Code. *See also State ex rel. Zonders v. Delaware County Bd. of Elections*, 69 Ohio St.3d 5, 11, 630 N.E.2d 313 (1994) ("the adoption of a zoning amendment, like the enactment of the original zoning ordinance, is a legislative act").

19. The Zoning Regulations were recommended by Resolution of the Township Zoning Commission on October 7, 1986 and adopted by the Township Board of Trustees on October 27, 1986. *See* Doc. No. 18, Joint Ex. 4, at page following 214. It appears that the only amendment to Section 1102–1 since the initial adoption was on June 14, 1998, when a 15–day reference in the section was changed to a 10–day reference. *See id.*, Amendment List at No. 67.

■ Notwithstanding defendant's counsel's argument that action under § 1102–1 is merely administrative and not legislative, the change made in May of 2000 by action of the Township Zoning Commission was in the nature of a zoning amendment. A particular portion of land within the PDD established in 1984 was effectively re-zoned when one whole type of commercial use was eliminated from the CDP. This action was beyond the scope of the Zoning Commission's authority, since the legislative action of amending a zoning classification can only be taken by the Township Board of Trustees after following the notice and hearing procedures set forth in Ohio Rev.Code § 519.12.[20] *See Donnelly v. Fairview Park,* 13 Ohio St.2d 1, 233 N.E.2d 500 (1968) (Syllabus ¶ 2) (test for determining whether an action is legislative or administrative "is whether the action taken is one enacting a law, ordinance or regulation, or executing or administering a law, ordinance or regulation already in existence"); *Hudson v. Albrecht, Inc.,* 9 Ohio St.3d 69, 73–74, 458 N.E.2d 852 (1984) (holding that it is unconstitutional for a zoning commission to exercise legislative powers which have been delegated only to the Board of Trustees), *appeal dismissed,* 467 U.S. 1237, 104 S.Ct. 3503, 82 L.Ed.2d 814 (1984); *Rispo v. Seven Hills,* 90 Ohio App.3d 245, 254, 629 N.E.2d 3 (1993) (same), *jurisdictional motion overruled* 68 Ohio St.3d 1410, 623 N.E.2d 567 (1993), *cert. denied by, Ludwinski v. Seven Hills,* 68 Ohio St.3d 1420, 624 N.E.2d 194 (1993). Further, by means of the action of the Zoning Commission, the plaintiff was deprived of his property rights [21] without due process.[22]

■ Weighing the four factors set out in *Mason County, supra,* it is clear to this Court that plaintiff has established that he is very likely to prevail on his claim of deprivation of his property rights without procedural due process and that, if a preliminary injunction does not issue, he will be irreparably, and substantially, damaged by the inevitably resulting loss of the GMC option contract. *See Bannum, Inc. v. City of Memphis,* 666 F.Supp. 1091, 1096 (W.D.Tenn.1986) (constitutional rights are "so fundamental to our legal system and to our society that any violation thereof will cause irreparable harm irrespective of the financial impact").

20. As already noted, *supra,* Section 519.12 establishes review by multiple levels of government, namely the zoning commission, the county or regional planning commission, and ultimately the township board of trustees, before a zoning resolution can be amended.

21. Property rights "are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Under Ohio law, a property owner's right to an existing zoning classification vests upon the submission of an application for a building or zoning certificate. *Zaremba Dev. Co. v. City of Fairview Park,* 84 Ohio App.3d 174, 176, 616 N.E.2d 569 (1992) (citing *Gibson v. Oberlin,* 171 Ohio St. 1, 167 N.E.2d 651 (1960)), *jurisdictional motion overruled,* 66 Ohio St.3d 1455, 610 N.E.2d 420 (1993). Defendants argue that Stile's property right did not vest under *Zaremba* because he did not "compl[y] with all the legislative requirements for the procurement of a [zoning certificate.]" 84 Ohio App.3d at 176, 616 N.E.2d 569. However, the Township Zoning Regulations also require action on an application within 30 days. The Township has offered no explanation as to why the Zoning Inspector chose to "sit on" the application rather than extending the applicant the courtesy of a telephone call to tell him that his application was not in compliance with the regulations. The Court finds this argument of the defendants to be no more than a red herring. Here, the issue is whether the Zoning Commission had the authority under Ohio law to take the action that it did.

22. This Court finds that the notice of a "redesignation" hearing did not meet the requirements of due process. The notice certainly did not convey any intention on the part of the Township to eliminate "community/regional sales" as one of the long-established permissible uses of the property. For due process purposes, a "notice must be of such nature as reasonably to convey the required information." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Further, this notice fell very far short of the requirements of Ohio Rev.Code § 519.12.

Here, where constitutional rights have undoubtedly been violated, the interests of third parties, at issue in the third *Macon County* factor, have little or no relevance. Finally, upholding federal constitutional rights by assuring that local governmental authorities do not act beyond the scope of their authority undoubtedly serves the public interest, satisfying the fourth factor.

### V. CONCLUSION

Accordingly, since plaintiff has satisfied the test for obtaining a preliminary injunction, his motion is GRANTED. Defendants are preliminarily enjoined from enforcing the "redesignation" decision with respect to the property in question.

IT IS SO ORDERED.